Theresa HICKMAN, Plaintiff-Appellant,

v.

Otis R. BOWEN, M.D., Secretary of Health and Human Services, Defendant-Appellee.

No. 86–2463.
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

Nov. 10, 1986.

Bill McKee, San Antonio, Tex., for plaintiff-appellant.

Helen M. Eversberg, U.S. Atty., Raymond A. Nowak, Asst. U.S. Atty., San Antonio, Tex., Valerie L.M. Olds, Atty., Office of General Counsel, Dept. of Health and Human Services, Dallas, Tex., for defendant-appellee.

Before REAVLEY, JOHNSON and DAVIS, Circuit Judges.

REAVLEY, Circuit Judge:

This appeal follows a summary judgment upholding the appellee's decision to reduce the appellant's Supplemental Security Income benefits by one-third pursuant to 42

U.S.C. § 1382a(a)(2)(A), for the eleven-month period during processing of appellant's application for benefits, because during that time she was living in her mother's household and receiving support and maintenance from her. Appellant claims that her benefits were improperly reduced because the support she received was a loan that she is obligated to repay. The Secretary counters by arguing that the available evidence indicates that no loan was made and, in any case, under the applicable regulations, in-kind assistance cannot be loaned. Because the factual question was not adequately developed below, and because we hold that loans cannot be limited solely to cash exchanges, we reverse and remand.

## I.

### FACTS

In January, 1983, appellant, Theresa Hickman, applied for supplemental security income (SSI) benefits under the Social Security Act, 42 U.S.C. §§ 1381–1383c (1983). Eleven months later, in December, 1983, an administrative law judge (ALJ) ruled that Hickman had not worked since January, 1973, and was disabled by "severe and recurrent uncontrollable epilepsy, a schizophrenic reaction, and obesity." In January, 1984, Hickman completed a social security form for determining her financial eligibility for SSI. She reported that she had lived with her mother all her life, and that her mother was 55 years old and working. When asked whether she pays rent, Hickman reported "no, but I will have to start paying rent when my check starts." Hickman also reported that she earns approximately $5 a month collecting aluminum cans and selling them for scrap. In response to whether she receives any support such as cash, free room or free food she replied, "free food and shelter, I make no contributions to [household] expenses yet."

Based on this information, a claims representative determined that Hickman was receiving support and maintenance and reduced her monthly payment by one-third from $318 per month to $212 per month. 42 U.S.C. § 1382a(a)(2)(A) (1983).[1] Hickman requested reconsideration, and a personal conference was held at which she completed another statement for determining continuing eligibility. Hickman's revised statement was identical to the original one except that she did not report receiving any income for collecting cans and denied receiving contributions such as free food or free room from her mother.

Hickman also completed a supplemental statement outlining her financial arrangement with her mother. She estimated total household expenses of $405, and listed her monthly payment as $200. She explained as follows:

> I pay my mother $100.00 a month rent and we divide the utilities and food in half. I started contributing my share when I received my first SSI check in 2/84. Prior to that, my mother gave me a loan of food and shelter. She divided all the bills in half and I am to pay her back all money due her when I receive my back SSI money. The money I get from selling cans is used for my bus fare. My mother loaned me an average of $25.00 a month in cash. She expects this to be paid back.

In addition, Hickman submitted receipts for the amounts she paid in February toward household expenses, totaling $150. Hickman's mother also submitted a letter stating that "[t]he living expenses for Theresa M. Hickman was a loan paid by me. Everything I provided for her was a loan to her which I expect to be paid back to me by her." In her supplemental statement, Hickman's mother checked the "not applicable" box to the following statement:

> [Theresa] lives with me and pays a flat amount each month of [$200.00] in ex-

---

**1.** Section 1382a(a)(2)(A) of title 42 of the United States Code provides that any individual "living in another person's household and receiving support and maintenance from such person, the dollar amounts ... shall be reduced by 33⅓

percent." Under the statute and regulations, this blanket rule applies whenever an applicant does not pay his share of food and shelter. "The one-third reduction rule applies in full or not at all." 20 C.F.R. § 416.1131(b) (1986).

change for room and board. I consider him/her to be a boarder rather than a member of my household. As with any other boarder, he/she would have to move out if he/she failed to make the monthly payment for room and board.

Based on the facts recited above, the claims representative issued a reconsideration decision affirming in part and reversing in part the initial decision. The claims representative ruled that Hickman should receive full benefits for months from February onward, but that for the eleven-month span from the date she first applied for SSI, until the time she began receiving SSI, her benefits were properly reduced. The representative based this decision on her understanding of the regulations, believing that "in-kind"[2] support such as food and shelter could not constitute a "loan" and so be excluded from income. She concluded that "[t]he loan in the form of room and board does not constitute a loan for SSI determination of living arrangement decisions."

### II.

The regulation upon which the claims representative based her conclusion, 20 C.F.R. § 416.1103(f) (1986), provides as follows:

*Proceeds of a loan.* Money you borrow or money you receive as repayment of a loan is not income.... Buying on credit is treated as though you were borrowing money and what you purchase this way is not income.

Hickman appealed the decision of the claims representative to the same ALJ that

had found her disabled in December, 1983. At the hearing, Hickman did not testify (apparently on instructions from her attorney), and argument centered exclusively on the legal question involving the interpretation of section 416.1103(f). The ALJ strictly construed this regulation observing, simply, that "416.1103(f) describes a loan as money borrowed or received."

The ALJ also found that no loan had taken place in this case. Basing his findings exclusively on the facts collected by the claims representative, the ALJ concluded that "there was no loan but, at most, a hope of payments." He observed:

[T]he evidence is not persuasive that a "business arrangement" type loan existed. The claimant has never worked (except maybe two weeks and fired) and never had income beyond minimal sums from the salvage of cans and her existence has been one of essentially support from the private sources of her parents, so that no collateral upon which one might be persuaded to make a loan is apparent from the evidence.

After exhausting her administrative remedies,[3] Hickman challenged the ALJ's ruling in the United States District Court for the Western District of Texas. Both parties filed motions for summary judgment, and the presiding judge referred the matter to a United States Magistrate. The magistrate commented that "[t]here is no dispute between the parties about the facts in this case. The dispute is over the interpretation of the facts under the applicable statutes and regulations." The magistrate based his conclusion squarely on his inter-

---

**2.** 20 C.F.R. § 416.1130 (1986) defines the scope of in-kind support and maintenance as follows:

(a) *General.* Both earned income and unearned income include items received in kind (§ 416.1102)....

(b) *How we define in-kind support and maintenance.* In-kind support and maintenance means any food, clothing, or shelter that is given to you or that you receive because someone else pays for it. Shelter includes room, rent, mortgage payments, real property taxes, heating fuel, gas, electricity, water, sewerage, and garbage collection services. You are not receiving in-kind support and mainte-

nance in the form of room or rent if you are paying the amount charged under a business arrangement.

**3.** After an adverse ruling from an ALJ, a claimant may ask the Appeals Council to review the decision. 20 C.F.R. § 416.1575 (1986). The decision of the Appeals Council represents the final decision of the Secretary, and all further appeals must be directed to the courts. 42 U.S.C. § 1383(c) (1983). Here, the Appeals Council denied Hickman's request for review, and she has now turned to the federal courts with her claim.

pretation of the regulation in question. He observed:

> Contrary to [appellant's] interpretation, this Magistrate reads § 416.1103(f) as excluding from "income" money which has been loaned, borrowed or which has been received as repayment of a loan. There is no mention of in-kind support and/or maintenance which has been loaned or borrowed, nor can such be read by implication into the provisions of § 416.-1103(f).

The district court adopted the magistrate's findings and granted summary judgment for appellee.

## III.

In a case such as this one, a circuit court's task duplicates the district court's (or magistrate's) work in that we independently review the Secretary's decision to determine if it is supported by substantial evidence. *Olson v. Schweiker*, 663 F.2d 593, 595 (5th Cir.1981). Our obligation is to scrutinize the entire record to ensure that substantial evidence exists to support the Secretary's decision. Moreover, decisions based on erroneous interpretations of law receive no deference. Fed.R.Civ.P. 52(a). *See e.g., Hatton v. Wicks*, 744 F.2d 501, 503 (5th Cir.1984).

Contrary to the magistrate's view, we find the facts and the conclusion to be drawn from these facts to be in significant dispute. Although the few facts that are before us are not specifically contested, the interpretation of those facts, *independent* of the applicable statute and regulations, is highly uncertain. The most immediate difficulty involves the meager factual record in this case. No evidence whatsoever was presented before the ALJ, so the only facts available are those gathered by the claims representative. Yet based on this smattering of evidence, the appellee argues that, regardless of whether in-kind loans even are possible under the regulations, the facts demonstrate that no loan took place in this case; and the appellant marshals equally few forces to urge the opposite conclusion.

As already noted, the magistrate never reviewed the substantiality of the evidence, relying instead on his belief that in-kind support and maintenance could not be loaned under the statute and regulations. The ALJ, on the other hand, did express his opinion on the facts available, believing that the familial relationship posed a significant barrier to finding a loan unless persuasively shown otherwise.[4] But at the hearing no witnesses testified and no evidence was presented.[5] Indeed, the transcript of the administrative hearing consists solely of claimant's counsel arguing the legal question regarding the interpretation of section 416.1103(f). Moreover, it seems fairly certain that the ALJ was guided, just as the claims representative who preceded him[6] and the magistrate who fol-

---

**4.** In her brief, the claimant argues that "[a]pparently no set of facts would have served to satisfy the ALJ that a loan of food and shelter between two adults who were related and living together could take place." We agree. The ALJ created an impossible burden for the claimant to carry. He stated that "family agreements may be made on the basis of acceptable business motivations but such must be persuasively evidenced." Certainly the claimant and her mother have self-serving reasons for now claiming that the support and maintenance over the eleven-months in question was loaned. But their relationship is only one factor to be weighed along with all of the evidence. Indeed, if a claimant has collateral to enter a "business arrangement type loan," as the ALJ thought necessary, she probably is not eligible for SSI in the first place.

**5.** At the hearing the claimant's counsel apparently proceeded on the assumption that the

claims representative had refused to reimburse the one-third reduction solely because the regulation does not contemplate in-kind loans, and not because no loan actually took place. This is a fair reading of the claims representative's ruling. Counsel assumed that the only issue to be determined at this point was the legal question, thus not requiring him to proffer any evidence.

**6.** In making the determination, the claims representative apparently placed significant reliance on the Secretary's Program Operations Manual System (POMS). Two sections particularly relevant to this action provide as follows:

> NOTE: *Sharing may be established on the basis of a cash loan between the household member who owns or rents the home and the individual. For example, if the owner lends the individual $200 from which the individual makes a contribution which*

lowed him, by the belief that section 416.-1103(f) does not encompass in-kind loans.[7] It is equally clear that the evidence so far produced in this case does not provide an answer to whether the in-kind support Hickman received from her mother was, in fact, a loan. Therefore, we must go on to determine whether section 416.1103(f) encompasses more than just "cash" loans. Because we answer this question affirmatively, we remand for further factual development.

## IV.

■ Apparently, no court has yet directly addressed the scope of section 416.-1103(f), and, in particular, its use to exclude from income in-kind support and maintenance that is "loaned" until SSI payments begin. In addition, the parties did not cite us to any legislative history, nor has this court found any in its own research, that might shed some light on this question. This is not surprising, however, since the statute does not mention the effect of loans on income. It is only in the regulations that we find excluded from income "money" borrowed.

The statute itself reveals that Congress did not mean to draw a distinction between cash and in-kind "income." Section 1382a of Title 42 of the United States Code defines income as both earned income and unearned income. And the definition of unearned income includes "support and maintenance furnished *in cash or kind.*" 42 U.S.C. § 1382a(a)(2)(A) (1983) (emphasis added).

Section 416.1103(f) is a subsection of section 416.1103, which lists ten exceptions to what is income. The section immediately preceding section 416.1103 defines "what is income," and does not make the fine distinctions appellee urges upon us. The definition reads as follows:

> Income is anything you receive in cash or in kind that you can use to meet your needs for food, clothing, or shelter. In-kind income is not cash, but is actually food, clothing, or shelter, or something you can use to get one of these.

20 C.F.R. § 416.1102 (1986). Throughout the statute, and indeed the regulations themselves, the same theme recurs; income includes both cash income *and* in-kind income. We see no justification for reading section 416.1103(f) to treat these two

---

meets his/her pro rata share, sharing may be established. However, in no instance is sharing to be established based on alleged increased future contributions. The determination must be made on the facts as they currently exist.... The mere fact that an individual has filed an application for SSI or title II benefits and will be contributing to the household when he/she receives the benefit does not satisfy the sharing requirements. Sharing can only be established when the benefits have been paid and the individual has actually begun contributing his/her pro rata share.

....

*Example 2—Future Contribution Alleged*
Mr. Howard resides with his sister's family. Mr. Howard is still recovering from a heart attack and at present has no income. He alleges he plans to reimburse his sister for the support and maintenance furnished when his title II and/or SSI benefits are received. Sharing cannot be established on the basis of the noncash loan allegation. Mr. Howard is receiving both support and maintenance from his sister and is subject to the one-third reduction. Once he is

found entitled and starts receiving benefits, and he reports he is now contributing to the household, sharing may be applicable.

In her reconsideration opinion the representative, obviously relying on the POMS, concluded that "[s]haring can only be established after the benefits have been paid and you have started contributing your pro rata share." However, although the POMS may provide us with some useful insights, it has no legal force and does not bind the courts. *Schweiker v. Hansen,* 450 U.S. 785, 789, 101 S.Ct. 1468, 1471, 67 L.Ed.2d 685 (1981). As a handbook representing internal policy, the POMS cannot answer the question before us; it simply informs us of present operating procedures of HHS employees.

7. Illustrative of this is the ALJ's affirmance of the claims representative's finding that the claimant received $25 a month as a loan from her mother. Yet this finding was based on the same evidence the ALJ thought insufficient to prove a loan of food and shelter took place. It appears that the form of the transaction, rather than the intent of the parties, influenced the ALJ to find that no loan had transpired.

forms of income differently for any purpose.

The first sentence of section 416.1103(f) excludes from income "[m]oney you borrow or money you receive as repayment of a loan." Most loans are money loans, but this sentence does not purport to exclude other forms of loans.[8] Indeed, the section goes on to stipulate that "[b]uying on credit is treated as though you were borrowing money and what you purchase this way is not income." Thus, the express language of the regulation sweeps beyond simply cash loans. Certainly, if someone purchases food or shelter on credit, and it is excluded from income, borrowing or being advanced such necessities should be treated similarly. In either case, as with a loan, the borrower is liable and must repay the lender.

Although no federal court has specifically interpreted section 416.1103(f), in *Bormey v. Schweiker*, 695 F.2d 164 (5th Cir. 1983), this court implied that this section *could* extend to in-kind loans. In *Bormey*, while receiving full SSI benefits the plaintiff contributed $100 a month to household expenses. Her benefits were interrupted for a ten-month span, however, in which time she did not contribute her pro rata share of expenses. When her benefits were reinstated she received a lump-sum payment for the ten months missed, but it was reduced by one-third pursuant to 42 U.S.C. § 1382a(a)(2)(A) (1983). This court refused to reimburse her for the one-third withheld, because the plaintiff believed she was under no obligation to pay her parents for the months she did not receive SSI. We observed:

> Her position was that while her benefits were suspended she did not, expressly or impliedly, agree to reimburse her parents, either absolutely or conditionally on her receipt of benefits, for any of the

food or shelter they furnished her during this period.

695 F.2d at 174. Although we never reached the question presented here, a clear implication of *Bormey* is that if the plaintiff had intended to reimburse her parents for the food and shelter she received during her ten months without SSI, she would have been entitled to full benefits.

██ We do not believe the present decision now allows every recipient of SSI who received in-kind support while awaiting processing of their application to collect full benefits for that waiting period. SSI recipients still must show that any in-kind support received was, in fact, loaned to them in realistic anticipation of repayment, and that they indeed intend to repay that debt. We believe this conclusion to be compelled, since we see no difference between Hickman receiving a $200 cash loan from her mother, which she in turn uses to pay for household expenses, and her receiving household benefits worth $200 that she must later pay back.

We therefore return this case to the district court with directions to further remand the case to the Secretary for a reconsideration of Hickman's benefits for the eleven months in question in accordance with this opinion.

REVERSED AND REMANDED.

---

8. We find it significant that the word "money" replaces "cash" in this section. Throughout the statute and regulations the word cash is used whenever a distinction is drawn between "cash income" and "in-kind income." As part of the definition of income, the word "cash" has special meaning under the statute, distinguishing cash receipts from all other kinds. The fact that "cash" was *not* used in section 416.1103(f) provides a possible clue to the intended scope of this section. If the drafters had meant to draw the distinction the Secretary insists upon, the use of the word "cash" would have been more likely.