Danielle GORDON, Plaintiff–Appellee,

v.

Donna E. SHALALA, Secretary of Health and Human Services, Defendant–Appellant.

No. 615, Docket 94–6011.

United States Court of Appeals, Second Circuit.

Argued Jan. 25, 1995.

Decided May 22, 1995.

Charles Robert, Rockville Centre, NY (Robert, Lerner & Bigler, Rockville Centre, NY, of counsel), for plaintiff-appellee.

Bruce H. Nims, Asst. U.S. Atty., Brooklyn, NY (Zachary W. Carter, U.S. Atty., Robert L. Begleiter, Deborah B. Zwany, Asst. U.S. Attys., Brooklyn, NY, Annette H. Blum, Chief Counsel, Kathleen A. Mahoney, Asst. Regional Counsel, Dept. of Health and Human Services, New York City, of counsel), for defendant-appellant.

Before: LUMBARD, VAN GRAAFEILAND and WINTER, Circuit Judges.

VAN GRAAFEILAND, Circuit Judge:

The Secretary of Health and Human Services appeals from a judgment of the United States District Court for the Eastern District of New York (Spatt, J.) reversing the Secretary's reduction of Danielle Gordon's Supplemental Security Income ("SSI") benefits on the ground that the Secretary applied incorrect legal standards in computing the benefits payable. For the reasons that follow, we reverse.

The SSI program provides benefits to aged, blind, or disabled individuals who meet the statutory income and resource limitations. 42 U.S.C. §§ 1382 and 1382a; 20 C.F.R. Part 416, Subpart K. A comprehen-

sive discussion of the complicated regulatory framework under which this program operates· is contained in *Ruppert v. Bowen,* 871 F.2d 1172, 1174–75 (2d Cir.1989). For purposes of this opinion, the following summary will suffice. An SSI recipient is paid a flat monthly benefit rate, but the benefits are reduced by the amount of non-excludable income received by the individual. 42 U.S.C. § 1382(b); 20 C.F.R. §§ 416.1100 and 416.1104. Such income is anything that the SSI recipient receives in cash or in kind that can be used to meet his or her needs for food, clothing and shelter, thus obviating, in part at least, the use of SSI funds for these purposes. 20 C.F.R. § 416.1102. In-kind support and maintenance is valued using one of two methods. 20 C.F.R. § 416.1130(c). When the recipient lives in the household of another person who provides both food and shelter, the in-kind support and maintenance is valued at one-third of the recipient's federal benefit rate, regardless of its actual value. 20 C.F.R. § 416.1131. In other situations, the Social Security Administration ("SSA") presumes that the in-kind income is worth a maximum value that is one-third the recipient's federal benefit rate plus $20 (the general unallocated income exclusion described in 20 C.F.R. § 416.1124(c)(12)). 20 C.F.R. § 416.1140. This presumption can be rebutted by showing that the current market value of the in-kind support minus any payment made for it by the recipient, or the actual amount paid by someone else for the recipient, is lower than the presumed value. *Id.*

In *Ruppert,* this Court held that further analysis is required in calculating SSI benefits. We said there that in order for a recipient's benefits to be reduced because of subsidized support, he or she must receive an "actual economic benefit" from the subsidy. In other words,

> if the proportion of income that [SSI recipients] expend on shelter is so great that "it flies in the face of reality to conclude that 'unearned income' in the form of subsidized shelter ... is 'actually available' to the recipient," *see Jackson [v. Schweiker ],* 683 F.2d [1076,] 1085 [ (7th Cir.1982) ], the unearned income should be disregarded.

*Ruppert,* 871 F.2d at 1180. Although this Court did not clearly state how this "actual economic benefit" test should be applied, we stated that "[t]he regulations used in the Seventh Circuit might provide a good indication of that, though we do not necessarily require their adoption as a matter of law." *Id.* at 1181.

In *Jackson,* the Seventh Circuit had required the Secretary to modify the SSI regulations so as to "impute unearned income attributable to the receipt of shelter or other basic necessities at prices below 'market value' only to the extent that the unearned income represents additional resources available to the recipient (increased purchasing power) to meet his or her basic needs." 683 F.2d at 1087. The resulting regulation, referred to in *Ruppert,* can be found in 20 C.F.R. § 416.1130(b). In the *Ruppert* Acquiescence Ruling, AR 90–2(2), 55 Fed.Reg. 28,-947 (1990), the Secretary decided that, in the Second Circuit, "actual economic benefit" would be determined in the same way:

> SSA has decided that it will determine that an applicant or recipient did not receive an "actual economic benefit" from a rental subsidy when the monthly amount of rent required to be paid equals or exceeds the presumed maximum value described in 20 C.F.R. Section 416.1140(a)(1) (one-third of the Federal benefit rate plus the $20 general income exclusion). If the required amount of rent is less than the presumed maximum value, we will impute as in-kind support and maintenance the difference between the required amount of rent and either the presumed maximum value or the current market rental value, whichever is less.

*Compare* 20 C.F.R. § 416.1130(b).

Danielle Gordon is a spastic quadripeligic with cognitive impairments. On April 29, 1986, she applied for SSI benefits seeking payments beginning June 1, the month after she would turn eighteen. In her application, she stated that she resided in her parents' household, received free food and shelter, and made no contributions towards her parents' expenses. In August 1986, the SSA awarded Danielle benefits retroactive to June 1986. However, because Danielle was living

in her parents' household and receiving in-kind support and maintenance from them, the SSA reduced her monthly benefits by one-third pursuant to 20 C.F.R. § 416.1131.

When Danielle turned eighteen in May 1986, she entered into a written agreement with her mother under which she paid her mother $100 per month for "rent" and an additional $100 per month for the separately designated purchase of food. Based on this agreement, Danielle requested reconsideration of the SSA's decision, contending that she had rental liability and lived in her own household. The SSA denied the reconsideration request, concluding that Danielle's living arrangements had not changed after she filed her application. It reasoned that, because she was not paying her equal share of the household expenses, she continued to live in the household of another. This decision was affirmed by an administrative law judge and the Appeals Council.

Danielle continued to pursue various avenues of relief, both administrative and legal, but had little success until the promulgation of the Secretary's *Ruppert* Acquiescence Ruling on July 16, 1990. Thereafter, Danielle was awarded higher monthly benefits retroactive for the period from June 1986 through December 1990. However, she did not obtain the full amount of her benefit request. Because Danielle's $100 rent was less than the presumed maximum value, the Appeals Council concluded that she had an "actual economic benefit" each month and reduced her benefits accordingly. The presumed maximum values during the relevant period were the following:

June to December, 1986—$132.00 per month [$112 (one-third of the monthly benefit rate of $336) plus $20]

January to December, 1987—$133.33 per month [$113.33 (one-third of the monthly benefit rate of $340) plus $20]

January to December, 1988—$138.00 per month [$118 (one-third of the monthly benefit rate of $354) plus $20]

January to December, 1989—$142.66 per month [$122.66 (one-third of the monthly benefit rate of $368) plus $20]

January to November, 1990—$148.66 per month [$128.66 (one-third of the monthly benefit rate of $386) plus $20]

Pursuant to 20 C.F.R. § 416.1130(b) and the *Ruppert* Acquiescence Ruling, in-kind support and maintenance was imputed to Danielle in the following amounts (the difference between the $100 per month rent and the presumed maximum value, minus the $20 general monthly income exclusion of 20 C.F.R. § 416.1124(c)(12)):

June to December, 1986 $12.00 per month

January to December, 1987 $13.33 per month

January to December, 1988 $18.00 per month

January to December, 1989 $22.66 per month

January to November, 1990 $28.66 per month

Danielle sought review of the Appeals Council's decision, claiming that the Secretary failed to apply the *Ruppert* standard properly. The district court agreed, believing that it would " 'fly in the face of reality' to conclude that the rent subsidy ... or even the presumed maximum value ... was actually available to the plaintiff and thus a[n] economic benefit to her." The court ordered the Secretary to recalculate Danielle's SSI benefits and to reimburse her for the underpayments.

Arguing for affirmance, Danielle contends that under the *Ruppert* standard, she cannot be said to have received an actual economic benefit from the rental subsidy. She contends that in 1986 she received monthly SSI benefits of $241 from which she paid $100—or 41%—in rent, leaving her with only $141 per month. She argues that this constitutes such a disproportionate share of income going towards rent that the rental subsidy should be disregarded. She also argues that since the amount of the subsidy—the rental value of the property, $406, less the $100 she paid—exceeded the amount of SSI benefits she received—$241—it "flies in the face of reality" to say that the amount of the rental subsidy was "actually available" to her. The

district court agreed with Danielle; we do not.

■ In *Ruppert*, this Court remanded to the district court to "determine whether the imputed income reflected any 'actual economic benefit.'" 871 F.2d at 1180–81. As mentioned above, we did not articulate any particular method for determining "actual economic benefit." However, we did specifically state that "[t]he regulations used in the Seventh Circuit [i.e., 20 C.F.R. § 416.1130(b)] might provide a good indication." *Id.* at 1181. In acquiescing in *Ruppert*, the Secretary decided to apply those regulations. We cannot say that the Secretary applied an incorrect legal standard. Although we did not require adoption of those regulations as a matter of law, we did suggest that they were reasonable. We now hold that they are acceptable.

Danielle focuses on the wrong details when she argues that a disproportionate share of her income is allocated to shelter. The 41% figure she cites is based on her post-reduction income, but examination of *Jackson*, upon which *Ruppert* is based, shows that the relevant percentage of income is determined using figures "*before* termination [or here, reduction] of SSI" benefits. *Jackson*, 683 F.2d at 1085 (emphasis in original). Here, the pre-reduction figure—based on the maximum monthly benefit rate for the period in question—is only about 30%. It is not at all clear that 30%—or even 41%—is disproportionate, especially since at least $141 in benefits remained after rent payments. *See Jackson*, 683 F.2d at 1082 (post-reduction figure of 33% considered "not ... abnormally large"); *id.* at 1085 n. 16 (22% pre- and 38% post-reduction considered "relatively high ... but not ... unmanageably large"); *id.* at 1083 (37% pre- and 66% post-reduction considered "not ... necessarily unreasonable" where $70 per month remained after rent payments). By comparison, the figures in *Jackson* were 77% before termination, *id.* at 1085, and 106% after the termination of benefits, *id.* at 1081.

In the instant case, it does not "fl[y] in the face of reality to conclude that unearned income in the form of subsidized shelter ... is actually available to" plaintiff. *Ruppert*, 871 F.2d at 1180 (internal quotations omit-

ted). The Secretary is not attempting to impute the full amount of the rental subsidy or even the presumed maximum value as income. Instead, the Secretary is imputing an amount ranging between $12 and $28.66 per month, and reducing her benefits by that amount. In other words, she received nearly the maximum monthly benefits. Because we believe that Danielle received an "actual economic benefit" from paying only $100 per month for shelter worth over four times as much, we cannot say that the Secretary's conclusion was erroneous.

Danielle also complains that the Secretary failed to apply the rule of *Hickman v. Bowen*, 803 F.2d 1377, 1381–82 (5th Cir.1986). The *Hickman* rule is that "in-kind loans" of support and maintenance are not "income" for SSI purposes under 20 C.F.R. § 416.1103(f). That section provides as follows:

(f) *Proceeds of a loan.* Money you borrow or money you receive as repayment of a loan is not income.... Buying on credit is treated as though you were borrowing money and what you purchase this way is not income.

Since an in-kind loan basically is "buying on credit," the *Hickman* rule is not unreasonable. Danielle is wrong, however, when she argues that we ordered the Secretary to follow the *Hickman* rule in the Second Circuit. Although the district court adopted the rule in *Ruppert v. Secretary of U.S. Dept. of Health and Human Services*, 671 F.Supp. 151, 167–68 (E.D.N.Y.1987), the issue was not before us on appeal, *see* 871 F.2d at 1178. We merely stated that by not reaching the issue,

we do not mean to invite the Secretary to appeal a similar ruling in a later case or to seek to avoid as to individual claimants the precedential effect of [the district court's] well reasoned opinion in the Eastern District or elsewhere in the Second Circuit.

*Id.*

■ In any event, we fail to see how the Secretary acted inconsistently with the *Hickman* rule. Danielle argues that the Appeals Council erroneously counted the in-kind loan of rent she received from her landlord-moth-

er. Her argument is based on her claim that, despite the written lease agreement between her and her mother, there was no in-kind rental subsidy because her mother did not intend the unpaid portion of Danielle's share to be a gift. Rather, there allegedly was an implied agreement that the reasonable value of her necessities would be considered an in-kind loan.

In *Ruppert,* this Court stated that

[u]nder New York law, an incompetent is liable under an implied agreement for the reasonable value of necessities. Whether a loan existed, then, depends on the families' intent rather than the existence of paper documentation.

871 F.2d at 1178 (citations omitted). However, this does not mean that Danielle's mother is free to assert after the fact the existence of a loan. The issue is whether a loan existed at the time the support was given, not whether the mother wishes to consider the support a loan now. The Appeals Council did not find the rental subsidy to be a loan, and there is no evidence that it was intended as such at the time. Furthermore, the implied contract claim is barred by the existence of the parties' express agreement on the matter. *Radio Today, Inc. v. Westwood One, Inc.,* 684 F.Supp. 68, 71–72 (S.D.N.Y.1988) (citing New York case law).

■ Finally, plaintiff claims that the *Ruppert* Acquiescence Ruling had to have been publicly promulgated pursuant to the Administrative Procedure Act (the "APA") in order to be effective. This argument is frivolous. The general rule on acquiescence rulings is that although they "do not have the force and effect of law, they constitute Social Security Administration interpretations of its own regulations and the statute which it administers. Accordingly, Social Security rulings are entitled to deference except when they are plainly erroneous or inconsistent with the [Social Security] Act." *Walker v. Secretary of Health & Human Services,* 943 F.2d 1257, 1259–60 (10th Cir.1991) (citations omitted). This Court, in *White v. Shalala,* 7 F.3d 296 (2d Cir.1993), dealt with the issue of whether a ruling must be promulgated under the APA. In that case, we said:

We have previously approached the question of whether a rule is subject to notice and comment requirements by focusing on whether the rule is interpretive or substantive. We articulated this distinction by stating that a substantive rule grants rights, imposes obligations, or produces other significant effects on private interests, while an interpretive rule is an agency's intended course of action, its tentative view of the meaning of a particular statutory term, or internal house-keeping measures organizing agency activities.... The central question is essentially whether an agency is exercising its rule-making power to clarify an existing statute or regulation, or to create new law, rights, or duties in what amounts to a legislative act.

*Id.* at 303 (citations and internal quotations omitted). The *Ruppert* Acquiescence Ruling was interpretive, not substantive. It did not create rights or impose obligations. It merely interpreted this Court's mandate in *Ruppert* to the effect that imputed income must provide the SSI recipient with an "actual economic benefit." It was not subject to the notice and comment requirements of the APA.

The judgment of the district court is reversed and the case is remanded with orders to reinstate the Secretary's determination.