Gale R. JOHNSON, Plaintiff–Appellee,

v.

Donna E. SHALALA *, Secretary of Health and Human Services, Defendant–Appellant.

No. 92–35507.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 3, 1992.

Decided Aug. 6, 1993.

* Pursuant to Fed.R.App.P. 43(c)(1), Donna E. Shalala, who succeeded Louis W. Sullivan as Secretary of Health and Human Services, is substituted as defendant-appellant in this case.

Stuart M. Gerson, Asst. Atty. Gen., Barbara Biddle and Howard S. Scher, U.S. Dept. of Justice, Washington, DC, for defendant-appellant.

Randall W. Robinson, Idaho Legal Aid Services, Inc., Lewiston, ID, for plaintiff-appellee.

Gill Deford and Kim Savage, National Senior Citizens Law Center, Los Angeles, CA, for plaintiff-appellee.

Before: GOODWIN, FARRIS, and PREGERSON, Circuit Judges.

FARRIS, Circuit Judge:

The Secretary of Health and Human Services appeals the decision of the district court granting summary judgment in favor of plaintiffs Tracy Defrance and Sandy Johnson (class representatives). The Secretary argues that the district court erred in certifying a class that included individuals who failed to meet either the 60–day limitations period or the exhaustion requirement in 42 U.S.C. § 405(g) (1988). We affirm in part and reverse in part.

The United States Magistrate Judge had jurisdiction pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). This court has jurisdiction over the Secretary's timely appeal pursuant to 28 U.S.C. § 1291.

## DISCUSSION

This case originally challenged the Secretary's policy of treating in-kind loans as income under the Supplemental Security Income program. The named plaintiff,[1] Gale Johnson, lived with his elderly mother while awaiting approval of his SSI application. Johnson's mother paid his share of the living expenses with the understanding that he would repay her when he started receiving SSI benefits.

The Social Security Administration had a systemwide policy of treating "in-kind" loans as income. The agency thus reflected the in-kind household expenses that Johnson's mother loaned him as income and reduced his lump sum award by one-third. Johnson would have received the full SSI check if his mother had loaned him cash to pay for his share of the living expenses or if he had paid his living expenses with a credit card. See SSR 78–26.

Johnson filed this action on September 19, 1990, on behalf of himself and others similarly situated. He asserted that the policy of distinguishing between in-kind loans and cash loans for the purpose of determining

income was invalid under the Social Security Act and the Equal Protection Clause of the Fifth Amendment.

Before the district court ruled on Johnson's complaint, we invalidated the challenged practice. See Ceguerra v. HHS, 933 F.2d 735 (9th Cir.1991). SSA changed its practice in December 1991. The district court ordered the Secretary to pay the eligible class members "SSI benefits retroactive to the date that the *loan of* in-kind support became available and was treated as income by the Secretary."

42 U.S.C. § 405(g) requires claimants to appeal a final decision by the Secretary within 60 days. Thus the Secretary argues that § 405(g) precludes the revival of claims that had "lapsed"—become final—more than 60 days before the filing of the claim in this case.

Section 405(g) also requires each social security claimant to exhaust his administrative remedies before appealing to a federal district court. Many members of the putative class had claims that had not lapsed at the time this action was filed but subsequently failed to exhaust their administrative remedies. The Secretary argues that the exhaustion requirement barred the district court from including those individuals in the class.

The district court waived the exhaustion requirement and tolled the sixty-day statute of limitations. The court certified the following class:

> all applicants for or recipients of SSI benefits who reside in the State of Idaho and whose SSI benefits have been denied, terminated, or reduced because of the Secretary's policy of counting in-kind loans as income, from April 1978 forward.

We review the district court's class definition order for an abuse of discretion. *Six (6) Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1304 (9th Cir.1990).

---

1. The original named plaintiff's complaint was subsequently mooted, but the district court grant-

ed two new plaintiffs' motion to intervene.

## I. *EXHAUSTION REQUIREMENT*

 Section 405(g) requires an SSI claimant to obtain a final judgment from the Secretary before seeking judicial review. A final judgment consists of two elements: the presentment of a claim to the Secretary and the exhaustion of administrative remedies. The presentment requirement is jurisdictional, and therefore cannot be waived by the Secretary or the courts. The exhaustion requirement—the first issue in this appeal—is not jurisdictional, and thus, is waivable by either the Secretary or the courts. *Matthews v. Eldridge*, 424 U.S. 319, 330, 96 S.Ct. 893, 900, 47 L.Ed.2d 18 (1975).

 The Supreme Court has suggested, and we have applied, a three-part test "to determine whether a particular case merits judicial waiver of the exhaustion requirement." *Briggs v. Sullivan*, 886 F.2d 1132, 1139 (9th Cir.1989); *see also Bowen v. City of New York*, 476 U.S. 467, 483, 106 S.Ct. 2022, 2031–32, 90 L.Ed.2d 462 (1986); *Matthews*, 424 U.S. at 330–31, 96 S.Ct. at 900–01. The claim must be (1) collateral to a substantive claim of entitlement (collaterality), (2) colorable in its showing that denial of relief will cause irreparable harm (irreparability), and (3) one whose resolution would not serve the purposes of exhaustion (futility). *Briggs*, 886 F.2d at 1139.

### A. *COLLATERALITY*

 The Secretary asserts that any claim that challenges a published SSA policy as inconsistent with a statute is not collateral to a claim for benefits. Whether the Secretary has published a challenged policy, however, does not determine whether the plaintiff's claim is collateral. *Greene v. Bowen*, 639 F.Supp. 554 (E.D.Cal.1986). A plaintiff's claim is collateral if it is not essentially a claim for benefits. *Bowen v. City of New York*, 476 U.S. 467, 483, 106 S.Ct. 2022, 2032, 90 L.Ed.2d 462 (1985).

In *City of New York*, plaintiffs challenged a policy that mandated a presumption that mentally disabled applicants were qualified to do unskilled work. The Supreme Court found that the plaintiffs' claims were collateral because the class members "neither ·

sought nor were awarded benefits in the District Court, but rather challenged the Secretary's failure to follow the applicable regulations." *Id.* at 483, 106 S.Ct. at 2032.

The plaintiffs here challenged the Secretary's policy of treating as income all in-kind loans. They sought the invalidation of a rule used to determine eligibility for benefits rather than the denial of benefits in a particular case. The plaintiffs' claim was no more a claim for benefits than the plaintiffs' claim in *City of New York*.

The Secretary argues that *Heckler v. Ringer*, 466 U.S. 602, 104 S.Ct. 2013, 80 L.Ed.2d 622 (1984), compels the conclusion that plaintiffs' challenge to the in-kind loan policy is not collateral. The Secretary contends that the Supreme Court viewed the plaintiffs' claim in *Ringer* as a claim for benefits because Ringer challenged the Secretary's published interpretation of a statute. According to the Secretary, the *Ringer* Court viewed Ringer's claim as one for benefits, because benefits would inevitably flow from the decision on the statutory interpretation issue.

The Secretary interprets *Ringer* too broadly. The plaintiffs in *Ringer* requested that the Secretary change her policy to allow payment for a medical procedure "so that respondents simply [would] not have to resort to the administrative process." *Ringer*, 466 U.S. at 614, 104 S.Ct. at 2021. The Court found that the plaintiffs' claim was "at bottom" a claim that they should be paid for their surgery. *Id.* As such, the plaintiffs' claim was "inextricably intertwined" with their claim for benefits. *Id.*

In contrast, the district court's class certification order requires that the Secretary readjudicate those claims that were denied under the in-kind policy. Some claimants will ·receive benefits they were once denied. For others, the readjudication will make no difference. They would not be entitled to benefits under either policy:

> Thus, the plaintiff's attack is essentially to the policy itself, not to its application to them, nor to the ultimate substantive determination of their benefits. Their challenge to the policy rises and falls on its

own, separate from the merits of their claim for benefits.

*Johnson v. Sullivan,* 922 F.2d 346, 353 (7th Cir.1990). The plaintiffs' claim is collateral because it is not "bound up with the merits so closely that [the court's] decision would constitute 'interference with agency process.'" *Id.* (quoting *Weinberger v. Salfi,* 422 U.S. 749, 765, 95 S.Ct. 2457, 2467, 45 L.Ed.2d 522 (1975)).

### B. *IRREPARABILITY*

The plaintiffs must raise "at least a colorable claim" that exhaustion will cause them irreparable injury. *Eldridge,* 424 U.S. at 331, 96 S.Ct. at 901. We have held that "a 'colorable' showing of irreparable injury is one that is not 'wholly insubstantial, immaterial, or frivolous.'" *Briggs,* 886 F.2d at 1140 (quoting *Cassim v. Bowen,* 824 F.2d 791, 795 (9th Cir.1987) (citations omitted)).

In *Eldridge,* the Court held that the plaintiff had "raised at least a colorable claim that because of his physical condition and dependency upon the disability benefits, an erroneous termination would damage him in a way not recompensable through retroactive payments." *Id.* at 331, 96 S.Ct. at 901. The Court found that because Eldridge claimed that he had a constitutional entitlement to a pretermination hearing, a decision "at the post-termination stage would not answer his constitutional challenge." *Id.* at 332, 96 S.Ct. at 901. Eldridge demonstrated that the exhaustion requirement would cause him both irreparable economic loss and the destruction of his claim.

■ The Secretary contends that these plaintiffs cannot show irreparable injury because exhaustion would not destroy their claim. She argues that the plaintiffs' injury is no different from any other Social Security applicant who suffers economic hardship while awaiting administrative processing. In *Leschniok v. Heckler,* 713 F.2d 520, 524 (9th Cir.1983), we rejected a similar objection by the Secretary: "We are not impressed with the Secretary's attempted justification: that no hardship exists here because '[T]hey are in the same situation as the many others the Secretary terminates....' The Secretary's argument, that many wrongs will make a

right, should be addressed to Congress." *Id.* In *Briggs,* we held that economic hardship does constitute irreparable harm. Back payments cannot "erase the experience or the entire effect of several months without food, shelter or other necessities." *Briggs,* 886 F.2d at 1140. We hold that the economic hardship suffered by the plaintiffs while awaiting administrative review constitutes irreparable injury. *See also Schweiker v. Chilicky,* 487 U.S. 412, 428, 108 S.Ct. 2460, 2470, 101 L.Ed.2d 370 (1988).

### C. *FUTILITY*

■ The Supreme Court has held that the "ultimate decision of whether to waive exhaustion should not be made solely by mechanical application of the *Eldridge* factors [collaterality and irreparable harm], but should also be guided by the policies underlying the exhaustion requirement." *City of New York,* 476 U.S. at 484, 106 S.Ct. at 2032. In most cases, the exhaustion requirement allows the agency to compile a detailed factual record and apply agency expertise in administering its own regulations. The requirement also conserves judicial resources. The agency will correct its own errors through administrative review.

However, when the agency applies a "systemwide policy" that is "inconsistent in critically important ways with established regulations," nothing is gained "from permitting the compilation of a detailed factual record, or from agency expertise." *Id.* at 485, 106 S.Ct. at 2032–33. The plaintiffs claimed that the Secretary's systemwide policy of treating all in-kind loans as income violated the Social Security Act. We do not need a detailed factual record for each claimant to decide such a "straightforward statutory" challenge. *Briggs,* 886 F.2d at 1140. Nor do we require the benefit of agency expertise because "the issue posed by the class members is one purely of statutory construction." *Briggs,* 886 F.2d at 1140.

As the Secretary notes in her brief, the in-kind policy was "binding on the Secretary's adjudicators." It is unlikely that an individual claimant could have succeeded in having the Secretary's policy overturned or his benefits restored through the administrative

process. *See Id.,* at 1141. Requiring each individual to exhaust his administrative remedies would result in a considerable waste of judicial resources. We therefore affirm the district court's waiver of the exhaustion requirement.

## II. 60–DAY RULE

■ The requirement that a claimant appeal an adverse decision within 60 days is not jurisdictional. It is waivable by the Secretary or the courts. *City of New York,* 476 U.S. at 478, 106 S.Ct. at 2029; *Honda v. Clark,* 386 U.S. 484, 501, 87 S.Ct. 1188, 1197, 18 L.Ed.2d 244 (1967). In *City of New York,* the Supreme Court found equitable tolling appropriate because the government's secret policy prevented claimants from discovering a violation of their rights. *City of New York,* 476 U.S. at 481, 106 S.Ct. at 2031.

In *Bailey v. Sullivan,* 885 F.2d 52, 63–64 (3d Cir.1989), the Third Circuit interpreted *City of New York* to hold that equitable tolling is appropriate only when governmental conduct prevents claimants from recognizing that they have a valid claim. The plaintiffs in *Bailey* attacked certain regulations as inconsistent with the Social Security Act. The plaintiffs asked the court to toll the statute of limitations. The court held, however, that because the regulations were "openly applied," the plaintiffs should have challenged the policy within the statute of limitations. *Id.* at 64; *see also Johnson,* 922 F.2d at 354 (declining to excuse exhaustion after adopting the Third Circuit's reasoning in *Bailey*).

The plaintiffs argue that the in-kind loan policy was in fact secret because it was issued only as a Social Security Ruling and not published in the Code of Federal Regulations. Unlike the challenged policy in the instant case, the policy in *Bailey* and *Johnson* had been published in the CFR. The *Johnson* court specifically distinguished its holding from cases in which the Secretary failed to publish the rule in the CFR. *See Johnson,* 922 F.2d at 355. Several courts have held that failure to publish a rule in the CFR is tantamount to enforcing a "secret" policy. These courts have found equitable tolling appropriate in such cases. *See, e.g., New York v. Sullivan,* 906 F.2d 910, 917 (2d Cir.1990); *Dixon v. Sullivan,* 792 F.Supp. 942, 960 (S.D.N.Y.1992); *Wilson v. Sullivan,* 734 F.Supp. 157, 174 (D.N.J.1990); *Hill v. Sullivan,* 125 F.R.D. 86, 95 (S.D.N.Y.1989).

■ The record indicates, however, that the SSA notified the affected claimants that their benefits were denied or reduced because of the in-kind loan policy. This notice should have alerted the plaintiffs of the basis for their claim. This is not a case in which the Secretary's failure to publish the policy in the CFR had "the same practical effect on claimants" as a secret policy. *Hill,* 125 F.R.D. at 95. The district court, therefore, abused its discretion in tolling the sixty-day statute of limitations. *See Pittston Coal Group v. Sebben,* 488 U.S. 105, 123, 109 S.Ct. 414, 425, 102 L.Ed.2d 408 (1988). All claimants whose claims had lapsed—either because further administrative review would have been foreclosed as untimely or because more than sixty days had passed after a final decision by the Secretary—at the time the class action was filed are barred from seeking relief.[2]

The plaintiffs argue that our decision in *Briggs,* requires us to waive the sixty-day rule. In *Briggs,* we stated in a footnote that the court's decision to excuse exhaustion also

disposes of the requirement that the plaintiffs' complaint be filed within 60 days of that final decision ... It would be absurd, and would require the impossible, for us to hold that a plaintiff must file his complaint within 60 days of the Secretary's final decision in a proceeding to which the claimant was a party when we are not requiring the

---

**2.** We reject the dissent's argument that *City of New York* supports a decision to toll the statute in this case. The rationale for equitable tolling in *City of New York,* a secret, internal policy that prevented the claimants from knowing the basis of their claim, simply does not apply to these claimants, who knew of the basis of their claim, yet chose not to pursue it. The dissent makes no attempt to explain why we should ignore this critical distinction, or the decisions of the Third and Seventh Circuits that have also found it persuasive. *See Bailey,* 885 F.2d at 64; *Johnson,* 922 F.2d at 354.

claimant to obtain such a decision in the first place.

*Briggs*, 886 F.2d at 1141 n. 8. The plaintiffs argue that under *Briggs* if the court decides to excuse the exhaustion requirement, it must also toll the sixty-day statute of limitations.

The plaintiffs construe *Briggs* too broadly. The plaintiffs in *Briggs* had mental impairments that made them eligible for disability benefits. Because of their impairments, the Secretary decided that their benefits should be paid to representatives who would act essentially as trustees. The plaintiffs sought to enjoin the Secretary's policy of suspending their payments for up to ninety days whenever a representative was unavailable. The court granted the injunction and tolled the statute of limitations. By tolling the statute of limitations, the court merely ordered the Secretary not to apply the suspension policy to any current or future beneficiaries. *See Briggs*, 886 F.2d at 1146. The court did not order the Secretary to make back payments to claimants for benefits that had already been withheld.

Similarly, we have previously ordered the Secretary to discontinue the in-kind loan policy. *Ceguerra*, 933 F.2d at 741. However, the plaintiffs also seek retroactive benefit payments back to 1978 when the Secretary adopted the in-kind loan policy. The *Briggs* court ordered prospective relief only, not the sweeping retroactive relief sought by the plaintiffs. We decline to order such retroactive relief for the plaintiffs for whom the statute of limitations had run when this action was filed.[3]

## III. *MANDAMUS JURISDICTION*

The plaintiffs argue that the district court had jurisdiction under the mandamus statute, 28 U.S.C. § 1361 (1988). The district court did not reach this issue, because it found jurisdiction over all the class members under section 405(g).

The mandamus statute provides that "[t]he district courts shall have original jurisdiction of any action . . . to compel an officer or employee of the United States or an agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. We have held that mandamus will lie against the Secretary under § 1361. *See Briggs*, 886 F.2d at 1142; *Leschniok*, 713 F.2d at 522; *Elliott v. Weinberger*, 564 F.2d 1219, 1225–26 (9th Cir.1977), *aff'd in part and rev'd in part on other grounds, Califano v. Yamasaki*, 442 U.S. 682, 99 S.Ct. 2545, 61 L.Ed.2d 176 (1979).

We have noted, however, that "mandamus would be appropriate only when a party demonstrated that the Secretary 'owed him a clear nondiscretionary duty.'" *Briggs*, 886 F.2d at 1142 (quoting *Ringer*, 466 U.S. at 616, 104 S.Ct. at 2022). In *Briggs*, we found that the Secretary had a "clear, nondiscretionary duty" to pay benefits directly to eligible beneficiaries when no representative payees existed. *Id.* at 1142. We therefore held that mandamus jurisdiction was appropriate even for the class members whose claims had lapsed or were not exhausted. *Id.*

The Secretary does not owe a similar duty to pay retroactive benefits or to reopen cases that have lapsed. Rather the Secretary owed the plaintiffs a duty to adjudicate their claims according to the Social Security Act.

---

**3.** The dissent contends that our opinion will produce an "anomalous result" because it requires claimants to file a lawsuit within sixty days of a decision they were supposedly not required to obtain. The dissent misconstrues our holding. Claimants who permitted their administrative remedies to lapse before the class action was filed were *required* to obtain a final decision. The only claimants who are excused from obtaining a final decision are those whose claims were still "live"—i.e. not foreclosed as untimely—when the class action was filed. They are excused for a reason. Those claimants received notice before their claims had lapsed that their claims would be pressed by the class, unless they opted-out. *See* Fed.R.Civ.P. 23(c)(2). They had

reason to believe that pursuing their individual claims was unnecessary. Persisting with individual claims concurrently with a class action that pressed the *same* claims would have been, as we have recognized, futile.

In contrast, the claimants who permitted their claims to lapse before the class action was filed did not have reason to abandon their individual claims. They would have been vindicated if they had sought judicial review. "[T]hey chose instead to accept incorrect adjudication," and are in no different position from any claimant who seeks to avoid the bar of the statute of limitations "on the ground that the decision was wrong." *Pittston Coal*, 488 U.S. at 123, 109 S.Ct. at 425.

The plaintiffs' right to appeal the Secretary's determination lapsed after sixty days. To succeed, the plaintiffs had to establish not only a duty to exclude in-kind loans from income, "but a duty to reopen the final determinations." *Pittston Coal Group v. Sebben,* 488 U.S. 105, 122, 109 S.Ct. 414, 424, 102 L.Ed.2d 408 (1988). The plaintiffs failed to discharge that duty.

We affirm the district court's decision to excuse the exhaustion requirement and reverse its decision to toll the sixty-day statute of limitations.

Affirmed in part. Reversed in part.

Each side shall bear its own costs.

PREGERSON, concurring in part and dissenting in part:

I concur in the result reached by the majority opinion in Part I and Part III. But I disagree with the result the majority reaches in Part II, which reverses the district court's decision to toll the 60–day filing requirement of 42 U.S.C. § 405(g).[1] I believe that the district court was well within its discretion by ruling that the exhaustion requirement was waived *and* that the 60–day limitations period was tolled for all claimants whose Supplemental Security Income ("SSI") payments were illegally reduced based on their receipt of in-kind loans.

### I.

There are four categories of claimants covered by the district court's class definition:

(a) Claimants who had not fully exhausted their administrative remedies at the time the suit was filed, but who could still obtain administrative review.

(b) Claimants who had not fully exhausted their administrative remedies, but whose claims had "lapsed," i.e., their opportunity to continue in the administrative process was foreclosed as untimely.

(c) Claimants who had fully exhausted their administrative remedies, i.e., who had obtained final decisions from the Secretary, but who had not filed suits in the district court within 60 days of the final decisions.

(d) Claimants who obtained final decisions within 60 days of filing suit in district court.

### A.

The claimants in category (a) are covered by Part I of the majority opinion and are properly included in the class definition. Though not specifically addressed in the majority opinion, claimants in category (d) are properly included in the class because they have satisfied both the exhaustion requirement and the 60–day filing requirement.

### B.

Claimants in category (b) were included in the class by the district court. Under Part II of the majority opinion these claimants are excluded from the class definition. In my view, they should be included.

We specifically considered this category of claimants in *Briggs* I:

> Although the Secretary seems to treat it as a separate requirement, our decision that the class members were not obliged to obtain a "final decision" from the agency before proceeding to district court also disposes of the requirement that the plaintiffs' complaint be filed within 60 days of that final decision.... It would be absurd, and would require the impossible, for us to hold that a plaintiff must file his complaint within 60 days of the Secretary's final decision in a proceeding to which the claimant was a party when we are not

---

1. Title 42 U.S.C. § 405(g) provides that a claimant may obtain judicial review of a Secretary's decision by filing a civil action in district court within 60 days after the Secretary mails a "final decision" to the claimant. The 60–day requirement constitutes a period of limitations. *Bowen v. City of New York,* 476 U.S. 467, 478, 106 S.Ct.

2022, 2029, 90 L.Ed.2d 462 (1986). The final decision requirement consists of two elements: presentment of the claim to the Secretary and exhaustion of administrative remedies. *Briggs v. Sullivan,* 886 F.2d 1132, 1138 (9th Cir.1989) (*Briggs* I).

requiring the claimant to obtain such a decision in the first place.

*Briggs* I, 886 F.2d at 1141 n. 8.

Part I of the majority opinion holds that claimants in category (a), i.e., claimants who could timely pursue their administrative remedies, are not required to satisfy the exhaustion requirement. Consequently, to be consistent, we must also permit claimants in category (b), whose time to pursue administrative remedies had lapsed, to join the class. To do otherwise would produce an anomalous result. The majority's holding not to toll the 60–day statute of limitations for claimants in category (b) requires those claimants to file a lawsuit within 60 days of a final decision they are not required to obtain. Under *Briggs* I, these claimants should be included in the class definition. Moreover, I do not believe that the absurdity identified in *Briggs* I is any less so because the relief sought here is retroactive rather than prospective. *See* majority opinion at 923.

## C.

Finally, Part II of the majority opinion would also exclude claimants in category (c): claimants who had exhausted their administrative remedies, but failed to file a federal action within 60 days of the Secretary's final decision. I disagree with this result. In my view, under *City of New York*, 476 U.S. 467, 106 S.Ct. 2022, once a court decides to include claimants in category (b), as I have suggested we must do here, it necessarily follows that claimants in category (c) should be included in the class definition.

In *Briggs* I, there were no claimants in the class who had received a final decision under § 405(g) because, under the Secretary's 90–day policy for withholding benefits at issue in that case, their claims would have become moot before such a decision could have been obtained. *Briggs* I, 886 F.2d at 1141. Therefore, in *Briggs* I, we did not deal with claimants who fit category (c). In *City of New York*, however, the Supreme Court treated those claimants who had obtained a final decision more than 60 days before the suit was filed exactly the same as claimants who failed to obtain a final decision and whose opportunity to obtain a final decision was foreclosed because they failed to meet an intermediate administrative time limit. 476 U.S. at 482, 106 S.Ct. at 2031. *See Bailey v. Sullivan*, 885 F.2d 52, 64 (3rd Cir.1989) ("Furthermore, *City of New York* clearly states that claimants who have allowed a claim to become final before the filing of a class action through failure to exhaust administrative remedies stand on the same footing as claimants who have received a final agency determination but have failed to seek judicial review."). To treat these two categories of claimants differently, i.e., include one category, but exclude the other, would produce an untenable result. We would be helping claimants who quit the process much earlier and abandoning claimants who had stuck with the process longer, but who gave up their pursuit before filing an action in federal court. Such a result would be an inappropriate application of a statute "that Congress designed to be 'unusually protective' of claimants." *City of New York*, 476 U.S. at 480, 106 S.Ct. at 2030 (quoting *Heckler v. Day*, 467 U.S. 104, 106, 104 S.Ct. 2249, 2251, 81 L.Ed.2d 88 (1984)).

Therefore, the district court was correct in applying our opinion in *Briggs* I to the tolling determination for all claimants as the logical next step in the *Briggs* I analysis. The district court, therefore, properly exercised its discretion by including claimants in the class whose time period for administrative *or* judicial review had passed—categories (b) and (c).[2]

---

2. The majority appears to be concerned with the "sweeping" relief that the district court has ordered, i.e., for all claimants, since 1978, whose SSI benefits have been denied, terminated, or reduced because of the Secretary's illegal policy of treating in-kind loans differently from cash loans. First, the parties agree that a reasonable estimate of the number of claimants in this class is 50 to 250. Second, the Social Security Administration was on notice as of at least 1986, when the 5th Circuit decided *Hickman v. Sullivan*, 803 F.2d 1377 (5th Cir.1986), that its policy was illegal. We should not tolerate a policy under which the Secretary continues to reduce benefits illegally. At the very least, all claimants whose benefits were reduced after the *Hickman* decision should be included in the class definition regardless of whether they timely pursued their administrative and judicial remedies.

## II.

In conclusion, I agree with the majority opinion that we should affirm the district court's holding that the exhaustion requirement was waived. But under *Briggs* I, if we uphold a waiver of the exhaustion requirement, to be consistent, we must also uphold the district court's ruling to toll the 60–day requirement for those claimants whose time to obtain a final decision had expired. Under *City of New York*, we then must treat those claimants who obtained a final decision, but who did not file an action within 60 days, the same as those for whom the time to obtain a final decision had expired. Therefore, the district court did not abuse its discretion by holding that the exhaustion requirement was waived and the 60–day limitations period was tolled for all claimants who had been illegally denied SSI benefits.

Accordingly, I concur in the result reached in Part I and Part III, but I respectfully dissent from the result reached in Part II.