Christopher T. **ERRINGER, et al., on behalf of themselves and a class of persons similarly situated, Plaintiffs,**

v.

Tommy **THOMPSON, Secretary of Health and Human Services, Defendant.**

No. CIV 01–112–TUC–BPV.

United States District Court, D. Arizona.

Sept. 19, 2001.

legislators' intent on when prosecution under the statute is intended.

Dina R. Lesperance, Arizona Ctr. for Disability Law, Phoenix, AZ, Sally Hart, Arizona Ctr. for Disability Law, Tucson, AZ, Gill Deford, Hilary S. Dalin, Mansfield Ctr., CT, Judith A. Stein, Center for Medicare Advocacy Inc., Willimantic, CT, for plaintiffs.

Sheila Lieber, Carlotta P. Wells, U.S. Dept of Justice Civil Division, Washington, DC, for defendant.

## ORDER

VELASCO, United States Magistrate Judge.

### PROCEDURAL BACKGROUND

This is a class action suit brought by various Medicare claimants against the Secretary of Health & Human Services challenging the Medicare policy and practice of denying beneficiaries payment for health services based on Local Coverage Determinations (LCDs). LCDs are created by private entities that contract with Medicare to delineate medical services or items for which coverage is authorized but to which no national policy applies. Plaintiffs claim that these LCDs are promulgated by private intermediaries without established criteria for their enactment, without notice to the public and an opportunity to comment, and without notice given to beneficiaries that denial of benefits is based on the LCDs.

The original Complaint was filed on March 16, 2001. The Amended Complaint, adding two additional named plaintiffs, was filed on June 15, 2001. Defendants filed a Motion to Dismiss on June 27, 2001 (Docket # 18). Plaintiffs filed an Opposition to Defendant's Motion to Dismiss ("Response" Docket # 24), and Defendant's filed a Reply on July 26, 2001. All parties have consented to proceed before Magistrate Judge Velasco. A hearing on the Motion to Dismiss was held on September 12, 2001.

### Amended Complaint

Four individuals bring this suit on behalf of themselves and a class of persons simi-

larly situated: Christopher T. Erringer, Lawrence Corcoran, Ethel W. Vestal, and Valerie Lavaque ("Plaintiffs"). The Plaintiffs, at all times relevant, were entitled to benefits under the Medicare program. The Plaintiffs each claim to have had medicare benefits denied them based on Local Coverage Determinations ("LCDs"), and are at various stages in the review process of an initial denial of coverage, although at the time of filing the Amended Complaint, no Plaintiff had completed a hearing before an Administrative Law Judge ("ALJ"). Subsequently, Plaintiffs' Response to the Motion to Dismiss indicates that Plaintiff Erringer was scheduled to appear before an ALJ on August 2, 2001, and Plaintiff Corcoran recently received a favorable decision at the Part B carrier hearing stage of his appeal. Plaintiff's counsel, at the hearing, notified the court that Plaintiff Erringer was informed by the ALJ at his administrative hearing that he would receive a favorable determination. All Plaintiffs' claim, however, that at the initial determination stage when Plaintiffs were sent a notice of denial of coverage, the actual basis for the denial, the LCDs, is not mentioned in the notice. Plaintiffs were notified, if at all, of the LCDs which formed the basis for denial in various manners and at various stages of review.

Plaintiffs raise four causes of action in the Amended Complaint: (1) violation of the Administrative Procedure Act ("APA"), 5 U.S.C. § 553; (2) violation of the Social Security Act ("SSA") § 1871, 42 U.S.C. § 1395hh; (3) violation of the Due Process Clause of the United States Constitution; and (4) violation of two provisions of the Medicare regulations setting standards for administrative appeals, 42 C.F.R. §§ 405.809, and 405.811.

Plaintiffs seek: (1) a declaratory judgment that the Secretary has violated the above statutory, Constitutional, and regulatory provisions; (2) an injunction prohibiting the defendant from denying Medicare payment based on LCD's until the Secretary has promulgated a regulation formally adopting the standards and procedures that are used to make such LCDs; and (3) an injunction denying payment at the initial and review determination levels based on a Medicare LCD without giving the beneficiary notice of the application and content of the Local Coverage Determination and the opportunity to submit controverting evidence.

## Motion to Dismiss

### Defendant's Position

The Defendant contends that Plaintiffs' claims arise under the Medicare Act. Consequently, their claims must be channeled through the administrative process created by the Medicare statute and the Secretary's implementing regulations, both of which require exhaustion of administrative remedies before filing a case in a federal court. Because each of the named plaintiffs has a pending administrative claim, this Court lacks jurisdiction over plaintiffs' amended complaint.

### Plaintiffs' Position

Plaintiffs assert that jurisdiction in this case is based on "the well established principle that exhaustion under 42 U.S.C. § 405(g) will be waived when the issues raised cannot be resolved through the administrative appeals process." In the alternative, Plaintiffs argue that jurisdiction should be found under 28 U.S.C. § 1331(" § 1331") (federal question jurisdiction) or 28 U.S.C. § 1361 (Mandamus Act jurisdiction).

### DISCUSSION

*Medicare Program and Coverage Determinations*

The Medicare program, Title XVIII of the Social Security Act (the Act), 42 U.S.C.

§ 1395 *et seq.*, is a health insurance program for eligible elderly and disabled individuals. Part A of the Medicare Act (hospital insurance) provides care in hospitals as an inpatient, critical access hospitals (small facilities that give limited outpatient and inpatient services to people in rural areas), skilled nursing facilities, hospice care, and some home health care. 42 U.S.C. § 1395j *et seq.* Part B of the Medicare Act (supplementary medical insurance) covers eighty per cent of the Medicare rate, called the "reasonable charge" for certain physician services, out-patient physical therapy, x-rays, laboratory testing and similar ancillary medical services. 42 U.S.C. § 1395j *et seq.* Under section 1862(a)(1) of the Act, no payment may be made under Part A or Part B for any expenses incurred for items or services that "are not reasonable and necessary for the diagnosis or treatment of illness or injury..." 42 U.S.C. § 1395y(a)(1)(A).

Responsibility for making coverage decisions has been delegated by the Secretary to the Health Care Financing Administration ("HCFA"). The HCFA has, in turn, entered into agreements with carriers and fiscal intermediaries ("Medicare contractors") to review, process, and pay claims under Parts A and B of the Medicare program. *See* 42 U.S.C. §§ 1395h, 1395v. Medicare contractors are responsible for determining, on a case-by-case basis, whether a particular service is covered by the Medicare program. Medicare contractors are required to do so applying the Act and regulations, and, in some instances, additional guidance provided by the HCFA

in the form of Rulings, Medicare Manual provisions, and various other guidance.

*National Coverage Determinations*

One approach the Secretary has taken to determine whether an item or service is reasonable and necessary, is to issue national coverage determinations ("NCDs"). *See* 42 C.F.R. § 405.860. The HCFA makes NCDs either granting, limiting, or excluding Medicare coverage for a specific medical service, procedure or device, pursuant to section 1862(a)(1) of the Act. 42 U.S.C. § 1395y(a)(1). An NCD is binding on all carrieres, fiscal intermediaries, and ALJs.

*Local Coverage Determinations*

When the HCFA decides that an NCD is not appropriate, HCFA contractors may make a local coverage determination [1] ("LCD") to provide guidance to beneficiaries and health care providers whose claims they process about whether a particular item or service is covered under the Medicare Act in a certain geographic region of the country. 65 *Fed.Reg.* 31124, at 31126. An LCD provides guidance, in the absence of, or as an adjunct to, an NCD by describing the clinical circumstances and settings under which an item or service is available, or is not available, to a beneficiary under section 1862(a)(1)(A) of the Act. *Id.* An LCD is not binding on a contractor in another area of the country or on an ALJ who decides cases at higher stages of the appeal process. *Id.*

Currently, the promulgation of LCDs is outlined in HCFA's Medicare Program In-

---

**1.** Until the Medicare, Medicaid and SCHIP Benefits Improvement and Protection Act of 2000 ("BIPA"), P.L. No. 554, 106th Cong., 2d Sess. § 522, 114 Stat. 2763A–543, was enacted on December 21, 2000, local coverage determinations were referred to as "local medical review policies" ("LMRPs"). Additionally, the proposed rule as set forth in 65 FR 31124, published in May, 2000, refers to

the term LCD. After the BIPA becomes effective, on October 1, 2001, LCDs largely will serve the same function as LMRPs currently serve and have served in the past. The term LCD, as used in this discussion, will encompass both the term as used in the newly enacted legislation and the historical use of the term in reference to LMRPs unless otherwise noted.

tegrity Manual (PIM). Each LCD must reflect local medical practice within the contractor's jurisdiction, and must be supported by substantial medical evidence. PIM Ch.1, §§ 2.1.B, 2.3.2.1, 2.3.2. The contractor must ensure that LCDs are consistent with the Medicare statute, regulations, NCDs, and other applicable federal guidance. PIM, Ch.1, § 2.1.B. The PIM also requires that contractors engage in a notice and comment process before publishing coverage policies.

The LCD development process is presently undergoing modification. HCFA intends to publish, through notice and comment rulemaking, standards that the agency will use to make both NCDs and LCDs under section 1862(a)(1) of the Act. 65 *Fed.Reg.* 31124 (May 16, 2000). The two broad criteria HCFA is considering for application to the development of LCDs are whether the item or service has been demonstrated to achieve a medical benefit and whether coverage of the item adds value to the Medicare population. 65 *Fed.Reg.* at 31126.

Additionally, the BIPA sets forth procedures by which an individual may appeal a denial of coverage for an item or service based on an existing LCD or NCD coverage determination. BIPA defines the term "local coverage determination" to mean

> a determination by a fiscal intermediary or a carrier under part A or part B, as applicable, respecting whether or not a particular item or service is covered on an intermediary or carrier-wide basis under such parts, in accordance with section 1862(a)(1)(A).

BIPA § 522(a)(2)(B), 114 Stat. 2763A–544.

*Administrative Appeals Process*

Medicare appeals involving coverage disputes differ for Part A and Part B claims. In Part A, fiscal intermediaries make an initial coverage determination. 42 C.F.R. § 405.702. The first step of appeal is an intermediary reconsideration. *Id.* § 405.710. If denial of the claim is affirmed after reconsideration the claimant is entitled to a hearing before an administrative law judge (ALJ). *Id.* § 405.720. If the claim is again denied, the claimant may seek review by the Departmental Appeals Board (DAB). *Id.* § 405.724. Finally, if the DAB also denies the claim, an appeal may be brought to Federal Court. *Id.* § 405.730.

In Part B, private contractors known as Medicare carriers make an initial coverage determination. *Id.* § 405.803. If the initial determination is adverse, the claimant may seek review of the claim by the carrier. *Id.* § 405.807. If denial of the claim is affirmed after review, the claimant is entitled to a hearing before the carrier. *Id.* § 405.821. If the claim is again denied, the claimant may obtain a hearing by an ALJ. *Id.* § 405.855. If the ALJ also denies the claim, the claimant may seek review by the DAB. *Id.* § 405.856. Again, if the DAB also denies the claim, an appeal may be brought to Federal Court. *Id.* § 405.857.

Pursuant to 42 U.S.C. § 1395ii, the Medicare Act incorporates the provisions of section 405(b), (g) and (h) of Title 42, the Social Security Act, to the same extent they are applicable to the Social Security Act.

Section 405(h) purports to make exclusive § 405(g)'s judicial review method. The relevant portion of section 405(h) reads as follows:

> No action against the United States, the Commissioner of Social Security, or any officer or employee thereof shall be brought under section 1331 or 1346 of Title 28 to recover on any claim arising under this subchapter.

While its "to recover on any claim arising under" language plainly bars § 1331 review where an individual challenges on any legal ground the agency's denial of a

monetary benefit under the Social Security and Medicare Acts, a question is raised as to whether or not this § 405(h) bars § 1331 review, where, as here, the challenge is not to a denial of monetary benefits, but to the administrative process on which a grant or denial of benefits is based.

*Exception for Total Preclusion of Judicial Review*

The Supreme Court recently addressed a similar issue in *Shalala v. Illinois Council on Long Term Care, Inc.*, 529 U.S. 1, 120 S.Ct. 1084, 146 L.Ed.2d 1 (2000)(*"Illinois Council"*). Members of an association of nursing homes brought an action challenging Medicare regulations for imposing sanctions or remedies for violations of statutory and regulatory requirements by nursing homes which had entered into a provider agreement with the Secretary, under Part A, to provide care to Medicare beneficiaries after a stay in a hospital. The challenge alleged violations of statutory requirements of the Medicare Act, unconstitutional vagueness, violation of Constitutional Due Process, and violation of the Administrative Procedure Act's demands for "notice and comment" and a statement of "basis and purpose." *Id.*

The Supreme Court addressed the two competing jurisdictional routes through which the association might arguably have brought its claims. *Id.* at 7–8, 120 S.Ct. at 1090–91. The route the association chose to follow was federal-question jurisdiction, as set forth in 28 U.S.C. § 1331, which states that "district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." *Id.* The route the associations did not follow, the special Medicare review route, is set forth under the Medicare Act provisions, 42 U.S.C. § 1395cc(h)(1), which incorporates the judicial review procedures of 42 U.S.C. § 405(g). *Id.*

The Supreme Court held that federal-question jurisdiction was barred under § 405(h), as incorporated by § 1395ii, because the claim did not fit within any exceptions to the jurisdictional requirement of § 405(h), as established by prior caselaw. *Id.* at 24, 120 S.Ct. at 1099–1100. Thus, the association was required to proceed through the special review channel that the Medicare statutes create.

In affirming the district court's dismissal of the association's claim, the Supreme Court analyzed in detail the jurisdictional requirements of § 405(h). Plainly, the Court held, the statute bars § 1331 review in a case where the agency denies a benefit and the individual challenges the lawfulness of that denial. *Id.* at 10, 120 S.Ct. at 1092. The Court then confronted the issue of claims which fall outside the clear bar to agency denial of a benefit.

The Court addressed an earlier case, *Weinberger v. Salfi*, 422 U.S. 749, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975), which also barred § 1331 jurisdiction irrespective of whether resort to judicial processes is necessitated by discretionary decisions of the Secretary or by his nondiscretionary application of allegedly unconstitutional statutory restrictions. *Illinois Council*, at 11, 120 S.Ct. at 1092 (quoting *Salfi, supra* at 760–761, 95 S.Ct. 2457). In addition, the Court found that the bar raised in *Salfi* did not preclude constitutional challenges, but simply required that they be brought under the same jurisdictional grants and in conformity with the same standards applicable to nonconstitutional claims arising under the Act. *Illinois Council*, at 11, 120 S.Ct. at 1092 (quoting *Salfi, supra* at 760–761, 95 S.Ct. 2457).

Although the Court acknowledged that the bar was clearer in *Salfi* because the plaintiff class had asked for relief that included a direction to the Secretary to pay Social Security benefits to those enti-

tled to them but for the challenged provision, the Court found that in a later case, *Heckler v. Ringer*, 466 U.S. 602, 104 S.Ct. 2013, 80 L.Ed.2d 622 (1984), a similar result was reached despite the absence of any request for such relief. *Illinois Council*, at 11–12, 120 S.Ct. at 1092–93.

In *Ringer*, four individuals brought a § 1331 action challenging the lawfulness (under statutes and the Constitution) of the agency's determination not to provide Medicare Part A reimbursement to those who had undergone a particular medical operation. The Court held that § 405(h) barred § 1331 jurisdiction over the action, even though the challenge was in part to the agency's procedures, the relief requested amounted simply to a declaration of invalidity (not an order requiring payment), and one plaintiff had as yet no valid claim for reimbursement because he had not even undergone the operation and would likely never do so unless a court set aside as unlawful the challenged agency "no reimbursement" determination. *See id.*, at 614–616, 621–623, 104 S.Ct. 2013. The Court reiterated that § 405(h) applies where "both the standing and the substantive basis for the presentation" of a claim is the Medicare Act, adding that a "claim for future benefits" is a § 405(h) "claim" and that "all aspects" of any such present or future claim must be "channeled" through the administrative process. *Id.* at 615, 104 S.Ct. 2013 (quoting *Salfi*, 422 U.S. at 760–761, 95 S.Ct. 2457)(internal quotation marks omitted).

The Court concluded that the interpretations in *Salfi* and *Ringer* indicated that § 405(h) reaches "beyond ordinary administrative law principles of 'ripeness' and 'exhaustion of administrative remedies' doctrines that in any event normally require channeling a legal challenge through the agency." *Illinois Council*, at 13, 120 S.Ct. at 1093. The Court explained the rationale for barring the typical application of the "ripeness" and "exhaustion" doctrines:

> Insofar as § 405(h) prevents application of the "ripeness" and "exhaustion" exceptions, *i.e.,* insofar as it demands the "channeling" of virtually all legal attacks through the agency, it assures the agency greater opportunity to apply, interpret, or revise policies, regulations, or statutes without possibly premature interference by different individual courts applying "ripeness" and "exhaustion" exceptions case by case. But this assurance comes at a price, namely, occasional individual, delay-related hardship. In the context of a massive, complex health and safety program such as Medicare, embodied in hundreds of pages of statutes and thousands of pages of often interrelated regulations, any of which may become the subject of a legal challenge in any of several different courts, paying this price may seem justified. In any event, such was the judgment of Congress as understood in *Salfi* and *Ringer.*

*Id.* at 13, 120 S.Ct. at 1093 (citations omitted). The Court concluded that *Salfi* and *Ringer* foreclosed distinctions based upon the "potential future" versus the "actual present" nature of the claim, the "general legal" versus the "fact-specific" nature of the challenge, the "collateral" versus "noncollateral" nature of the issues, or the "declaratory" versus "injunctive" nature of the relief sought. *Id.* at 13–14, 120 S.Ct. at 1094. Nor could the Court accept a distinction that limited the scope of § 405(h) to claims for monetary benefits:

> Claims for money, claims for other benefits, claims of program eligibility, and claims that contest a sanction or remedy may all similarly rest upon individual fact-related circumstances, may all similarly dispute agency policy determinations, or may all similarly involve the

application, interpretation, or constitutionality of interrelated regulations or statutory provisions. There is no reason to distinguish among them in terms of the language or in terms of the purposes of 405(h). Section 1395ii's blanket incorporation of that provision into the Medicare Act as a whole certainly contains no such distinction. Nor for similar reasons can we here limit those provisions to claims that involve "amounts."

*Id.* at 14, 120 S.Ct. at 1094.

The Court rejected the Court of Appeals interpretation of another case, *Bowen v. Michigan Academy of Family Physicians,* 476 U.S. 667, 106 S.Ct. 2133, 90 L.Ed.2d 623 (1986) (*"Michigan Academy"*), which would have modified the Court's earlier holdings by limiting the scope of "1395ii and therefore § 405(h)" to "amount determinations." *Illinois Council,* at 15, 120 S.Ct. at 1095. However, the Court, noting that the earlier decision in *Michigan Academy* recognized that a "serious constitutional question would arise if we construed § 1395ii to deny a judicial forum for constitutional claims arising under Part B," acknowledged that *Michigan Academy* rejected strict application of § 405(h) where its application to a particular category of cases would not lead to a channeling of review through the agency, but would mean no review at all. *Id.* at 17, 120 S.Ct. at 1095–96. The Court found this rule to apply to Medicare Part A as much as to Medicare Part B.

The plaintiffs in *Illinois Council,* however, were unable to convince the Court that they could obtain no review at all unless they obtained judicial review in a § 1331 action. In other words, the plaintiffs failed to show that application of § 1395ii's channeling provision to the portion of the Medicare statute and the Medicare regulations at issue in that case would have amounted to a "practical equivalent of a total denial of judicial review."

The Court held:

... [T]he question is whether, as applied generally to those covered by a particular statutory provision, hardship likely found in many cases turns what appears to be simply a channeling requirement into *complete* preclusion of judicial review.... Of course, individual hardship may be mitigated in a different way, namely, through excusing a number of the steps in the agency process, though not the step of presentment of the matter to the agency.

*Illinois Council,* at 22–23, 120 S.Ct. at 1098–99.

The Court also held that the "fact that the agency might not provide a hearing for that *particular contention,* or may lack the power to provide one, is beside the point because it is the 'action' arising under the Medicare Act that mush be channeled through the agency. After the action has been so channeled, the court will consider the contention when it later reviews the action. And a court has adequate authority to resolve any statutory or constitutional contention that the agency does not, or cannot, decide, including, where necessary, the authority to develop an evidentiary record."

*Waiver of Exhaustion*

In *Illinois Council,* the Supreme Court distinguished *Mathews v. Eldrige,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), in which the Court held permissible a lawsuit challenging the constitutionality of agency procedures authorizing termination of Social Security disability payments without a pretermination hearing because in that case, the Court found that the respondent had followed the special review procedures set forth in § 405(g), thereby complying with, rather than disregarding, the strictures of § 405(h). *Illinois Council,* at 14–

15, 120 S.Ct. at 1094. The Court characterized the constitutional issue the respondent raised as "collateral" to his claim for benefits, but it did so as a basis for requiring the agency to excuse, where the agency would not do so on its own, some (but not all) of the procedural steps set forth in § 405(g). *Id.* The Court identified the collateral nature of the claim, and irreparable injury as reasons to excuse § 405(g)'s exhaustion requirement. *Id.*

Section 405(g) requires a claimant to obtain a final judgment from the Secretary before seeking judicial review. *Johnson v. Shalala,* 2 F.3d 918, 921 (1993). A final judgment consists of two elements: the presentment of a claim to the Secretary and the exhaustion of administrative remedies. *Id.* The presentment requirement is jurisdictional, and therefore cannot be waived by the Secretary or the courts. *Id.* The exhaustion requirement is not jurisdictional, and thus, is waivable by either the Secretary or the courts. *Id.*

■ The Ninth Circuit has identified a three part test for waiver of exhaustion under § 405(g). A claim must be (1) collateral to a substantive claim of entitlement (collaterality); (2) colorable in its showing that denial of relief will cause irreparable harm (irreparability); and (3) one whose resolution would not serve the purposes of exhaustion (futility). *Id.,* at 920; *see also Bowen v. City of New York,* 476 U.S. 467, 483, 106 S.Ct. 2022, 2031–32, 90 L.Ed.2d 462 (1986); *Mathews,* 424 U.S. at 330–31, 96 S.Ct. at 900–01.

A plaintiff's claim is collateral if it is not essentially a claim for benefits. *Johnson v. Shalala,* 2 F.3d at 920. A claim is collateral if it "is not 'bound up' with the merits so closely that [the court's] decision would constitute 'interference with agency process.'" *Id.,* quoting *Johnson v. Sullivan,* 922 F.2d 346, 353 (7th Cir.1990) ("*Johnson*"). In *Johnson* the Ninth Circuit found collateral a claim that sought

the invalidation of a rule used to determine eligibility for benefits rather than the denial of benefits in a particular case. The Ninth Circuit addressed the contrast between claims that are essentially for benefits and claims which are collateral, "[s]ome claimants will receive benefits they were once denied. For others, the readjudication will make no difference. They would not be entitled to benefits under either policy:

> Thus, the plaintiff's attack is essentially to the policy itself, not to its application to them, nor to the ultimate substantive determination of their benefits. Their challenge to the policy rises and falls on its own, separate from the merits of their claim for benefits.

*Johnson v. Sullivan,* 922 F.2d 345, 353 (7th Cir.1990)." 2 F.3d at 921–22.

A claim of irreparable injury is colorable if the claim is not "wholly insubstantial, immaterial, or frivolous." *Johnson v. Shalala,* 2 F.3d at 920.

■ Simply because many other applicants suffer the same injury does not prove that a hardship does not exist. *Johnson v. Shalala,* 2 F.3d at 921. Economic hardship may constitute irreparable harm, because back payments cannot erase the experience or the entire effect of several months without food, shelter or other necessities. *Johnson v. Shalala,* 2 F.3d at 921–22, citing *Briggs v. Sullivan,* 886 F.2d 1132, 1140 (9th Cir.1989).

Despite the formulation of a three part test, the ultimate decision of waiver is not to be applied mechanically, but should be guided by the policies underlying the exhaustion requirement. *Bowen v. City of New York,* 476 at 484, 106 S.Ct. at 2032. In most cases, the exhaustion requirement allows the agency to 1) compile a detailed factual record, 2) apply agency expertise in administering its own judicial resources, and 3) provides the agency the opportunity

to correct its own errors through administrative review. *Johnson v. Shalala,* 2 F.3d at 922. However, nothing is to be gained from permitting the compilation of a detailed factual record, or from agency expertise, when the agency applies a system wide policy that is inconsistent in critically important ways with established regulations. *Id.* Additionally, utilization of judicial resources is another factor to consider. *Id.* If requiring each individual to exhaust his administrative remedies would result in a considerable waste of judicial resources, then waiver may be appropriate. *See id.*

In this case, unlike *Illinois Council,* the Plaintiffs have all initially presented their challenges of the agency's denial of their claims to the agency or its carriers or financial intermediaries. In fact, some of those claims have now reached a point of resolution in favor of Plaintiffs. Accordingly, in this case, there appear to be two questions this court must address as follows:

(1) Have Plaintiffs made an adequate showing of the three elements (collaterality, irreparable injury, and futility) required to establish waiver of the remaining procedural requirements set forth in § 405(g), pursuant to *Mathews v. Eldridge,*?

(2) Are Plaintiffs required to exhaust their claims, or is this a case, unlike *Illinois Council,* where channeling the action through the agency would completely preclude judicial review of the Plaintiffs' claims?

If the answer to either question is yes, then the Motion to Dismiss should be denied.

*Waiver of Exhaustion Under Eldridge*

In the present action, the first element is not at issue. What is at issue is whether judicial waiver of the exhaustion requirement is appropriate in Plaintiffs' case.

This Court finds that this case is appropriate for waiver of the exhaustion requirements pursuant to *Eldridge* and *Johnson.* First, as the administrative review of Plaintiffs Erringer's and Corcoran's cases indicate, the claims these Plaintiffs wish to address in federal court are entirely collateral to their claim for benefits because they are not "essentially a claim for benefits." *See Johnson, supra.* In fact, in some cases, despite obtaining benefits, these Plaintiffs have continued to pursue these claims in court. Plaintiffs' claims address the procedural application, not the substance, of the LCDs. The challenge to the policy "rises and falls on its own, separate form the merits of their claim for benefits." *See Johnson, supra.* The fact that Plaintiffs are able to obtain benefits through the administrative review process without having these claims addressed is illustrative of the collateral nature of these claims. The Defendant has not shown that a decision by the courts on Plaintiffs' claims would constitute impermissible interference with agency process.

Plaintiffs' claims presented in the Amended Complaint rise and fall on their own, and are thus collateral to Plaintiffs' claims for benefits.

Second, the facts in this present action meet the definition of irreparable harm for purposes of exhaustion, as "damage in a way not recompensable through retroactive payments," set forth by the Ninth Circuit in *Johnson,* and that such irreparable harm will clearly be imposed on Plaintiffs in this case.

Finally, the resolution of Plaintiffs Erringer's and Corcoran's claims amply illustrates the futility of the administrative review process. The administrative process does not serve the purposes of exhaustion in these cases. In this case, the compilation of a detailed factual record will not assist the agency or the courts in making

a determination of Plaintiffs' claims. Because the agency cannot address the issues raised by Plaintiffs, the application of agency expertise in administering its own judicial resources is not a concern. Finally, because the issues cannot be addressed through the administrative appeals process, the agency does not have an opportunity to correct its own errors through administrative review. Requiring each individual Plaintiff in the present action to exhaust administrative remedies would not serve the policies underlying exhaustion and would impose a great burden on claimants. Furthermore, exhaustion would not address the claims which specifically challenge the very administrative review and appeal procedures which Defendant asserts should be exhausted. Consideration of all three factors in the present action justifies judicial waiver of the exhaustion of administrative remedies requirement.

*Exhaustion as Total Preclusion*

Plaintiffs argue as a second basis for jurisdiction, that unlike the plaintiffs in *Illinois Council,* requiring Plaintiffs in this case to exhaust their administrative remedies would not merely postpone review, but would entirely eliminate judicial review.

Plaintiffs argue that in this case, Plaintiffs challenge the constitutionality of their appeals notices and the lack of promulgation of criteria for rules——both procedural issues that will not lead to payment of benefits. Plaintiffs assert that federal question jurisdiction is available for individuals to raise legal issues for which an adequate remedy can not be attained through the Social Security administrative appeals process.

Unlike the plaintiffs in *Illinois Council,* it appears that requiring Plaintiffs to exhaust their claims before bringing them to federal court would result in the total preclusion of Plaintiffs' claims in cases where the Plaintiff prevails in the administrative process.

This Court has federal question jurisdiction pursuant to *Illinois Council* and as a result of the Court's explicit waiver of the second requirement of exhaustion pursuant to *Eldridge.* Accordingly;

IT IS ORDERED Defendant's Motion to Dismiss (Document # 18) is hereby DENIED.