Sonia MEDELLIN, individually and on behalf of all others similarly situated; Mary Bowers, individually and on behalf of all others similarly situated; Ronald Trotter, individually and on behalf of all others similarly situated; Donald Langley, individually and on behalf of all others similarly situated, Appellees,

v.

Donna E. SHALALA, Secretary of Health and Human Services, Appellant.

No. 93–2231.

United States Court of Appeals, Eighth Circuit.

Submitted Dec. 17, 1993.

Decided April 28, 1994.

Rehearing Denied June 2, 1994.

As Corrected June 8, 1994.

---

Malcolm L. Stewart, Washington, DC, argued (Stuart E. Schiffer, Michael A. Jones, William Kanter and Malcolm L. Stewart, on the brief), for appellant.

Maria T. Dugan, Kansas City, MO, argued, for appellee.

Before MAGILL and BEAM, Circuit Judges, and VAN SICKLE,* Senior District Judge.

MAGILL, Circuit Judge.

In this class action resulting in a recalculation of Supplemental Security Income (SSI) benefits with respect to "unearned income," the Secretary of Health and Human Services (the Secretary) appeals from the district court's order defining the scope of the certified class. Because the district court included claimants with time-barred claims (lapsed claims) in the certified class and equitable tolling cannot justify their inclusion, we reverse and remand to the district court. There is no challenge to the merits of the judgment.

## I. BACKGROUND

■ The plaintiffs filed suit to challenge and receive relief from the Secretary's policy of reducing Supplemental Security Income benefits if a claimant has received a loan of in-kind[1] support. The Secretary revised her policy, based upon her reinterpretation of 20 C.F.R. § 416.1103(f), during the pendency of this lawsuit. Thus, the validity of the policy ceased to be an issue and the controversy focused on the proper scope of the class entitled to relief.

SSI benefits are available to income-eligible aged, blind, or disabled individuals. 42 U.S.C. § 1382(a) (1988). Income considered for benefit eligibility purposes includes both earned and unearned income. *Id.* § 1382a(a). Support and maintenance received in-kind from another individual is con-

sidered unearned income, thus increasing a claimant's income for eligibility purposes. The Secretary, however, will "in lieu of including such support and maintenance in the unearned income of such [an] individual," *id.* § 1382a(a)(2)(A), decrease the total benefit received by one-third. *Id.*

Pursuant to regulation, the Secretary excludes from her computation of a claimant's income the amount of any loan. 20 C.F.R. § 416.1103(f) (1993). Prior to December of 1991, the Secretary interpreted her regulation to be limited to loans of money. S.S.R. 78–26 (Cum.Ed.1978).[2] As a result of her policy, the Secretary did not consider whether support or maintenance received in-kind was gratuitous or a loan. Regardless, the claimant's benefits were reduced by one-third.

The Secretary, on December 16, 1991, issued a nationwide change in policy regarding her treatment of in-kind loans for recipients of SSI benefits. The change in policy put the Social Security Administration (SSA) in compliance with the decisions of the two courts of appeal that had found that in-kind loans should not be considered income. *See Ceguerra v. Secretary of Health & Human Servs.*, 933 F.2d 735 (9th Cir.1991); *Hickman v. Bowen*, 803 F.2d 1377 (5th Cir.1986).

In the instant case, the district court found that the opening date for the class was November 10, 1986, the date the *Hickman* decision was filed.[3] The district court included in the class all SSI applicants or recipients residing in the State of Missouri who made, or will make, a claim for SSI benefits and received, or will receive, a decision from the Secretary denying the claim on any administrative level on the basis that the applicant/recipient received in-kind support that

---

* THE HONORABLE BRUCE M. VAN SICKLE, Senior United States District Judge for the District of North Dakota.

1. In-kind loans of maintenance and support are loans of actual food and housing as opposed to financial support.

2. This published policy was available to the public in social security offices in the *Social Security Rulings: Cumulative Bulletin 1978, SSR 78–1c to SSR 78–33*. The existence and availability of such publications is published in the Code of

Federal Regulations. *See* 33 Fed.Reg. 9606 (1968); 20 C.F.R. § 422.406 (1993).

3. After *Hickman* was decided in 1986, the Secretary issued Acquiescence Ruling 88–7(5), agreeing to apply *Hickman's* interpretation in the Fifth Circuit. However, the Secretary continued to interpret 20 C.F.R. § 416.1103(f) to exclude loans of support and maintenance in-kind elsewhere throughout the nation. When *Ceguerra* was decided in 1991, the Secretary then changed her policy nationwide.

the Secretary considered income, despite an obligation to repay under a loan agreement.

The district court's certified class includes four categories of plaintiffs. Those categories are: (Category One) individuals who failed to exhaust fully the available administrative remedies and for whom exhaustion and judicial review were time-barred at the time the complaint was filed;[4] (Category Two) individuals who fully exhausted the available administrative remedies, but failed to pursue timely judicial review and for whom judicial review was time-barred at the time the complaint was filed;[5] (Category Three) individuals with pending or available administrative actions at the time the complaint was filed; and (Category Four) individuals with pending or available judicial actions at the time the complaint was filed. The Secretary appeals the district court's order including Categories One and Two in the certified class.

## II. DISCUSSION

The two categories of putative class members whose certification is challenged by the Secretary have "lapsed" claims; these claimants either allowed their claims to become final before exhausting their administrative remedies or continued to appeal through the administrative process but did not file for judicial review within the requisite sixty days. See Marcus v. Sullivan, 926 F.2d 604, 613 (7th Cir.1991). Both third and fourth category claimants have "live" claims; regardless of any court action, these claimants have review options available.[6] Id.

The distinction between the plaintiffs in Categories One and Two relates to the stage at which the Secretary's decision became final. Category One claimants have all received a binding decision from the Secretary as a result of their failure to pursue timely administrative review; these claimants, however, were never eligible for § 405(g) judicial review. Category Two claimants have also received a binding decision from the Secretary, but because these claimants failed to file a complaint in district court within sixty days of that decision, their claims are time-barred.

Otherwise time-barred claimants may, if they meet the requirements of the doctrines of equitable tolling or waiver of exhaustion, be allowed to proceed with their claims. See Bowen v. City of New York, 476 U.S. 467, 487, 106 S.Ct. 2022, 2033, 90 L.Ed.2d 462 (1986). Equitable tolling allows a claim barred by a limitations period to go forward. See id. at 479, 106 S.Ct. at 2029. In contrast, waiver of exhaustion allows an administrative claim essentially to leap-frog over the otherwise required administrative procedures and go straight to court. See, e.g., id. at 482, 106 S.Ct. at 806; Johnson v. Shalala, 2 F.3d 918, 924 & n. 3 (9th Cir. 1993); Marcus, 926 F.2d at 613; Bailey v. Sullivan, 885 F.2d 52, 64–65 (3d Cir.1989). Equitable tolling principles, not waiver of exhaustion, resolve whether the Categories One and Two putative class members may go forward with their claims because both sets of claimants are otherwise barred by a limi-

4. Under the framework set up by the Social Security Act, a claimant for SSI benefits must exhaust administrative remedies before judicial review of his or her claim is available. See 42 U.S.C. § 405(g) (1988). The regulations state specific time limitations after which the decision or determination is binding and review is not available. 20 C.F.R. § 416.1405 ("An initial determination is binding unless you request a reconsideration within the stated time period."); id. § 416.1421 (reconsidered determination); id. § 416.1455 (decision of administrative law judge); id. § 416.1481 (decision of the appeals council). Generally, a claimant has 60 days after each determination to request review at the next stage. See, e.g., 20 C.F.R. § 416.1409(a).

5. A decision regarding a claimant's social security benefits becomes final either by failing to

request further administrative review within the requisite time period defined by the regulations, see supra note 4, or by exhausting his or her administrative remedies. In either case, the decision or determination becomes the final decision of the Secretary. But, only in the latter case is a claimant's disputed claim eligible for judicial review: the statute, 42 U.S.C. § 405(g), explicitly requires a claimant to file any claim for judicial review within 60 days of the final decision of the Secretary "made after a hearing to which he was a party," id.; see also 20 C.F.R. § 416.1481.

6. During the pendency of this appeal, the parties entered into a consent judgment that expanded for purposes of this litigation only the definition of a "live" claim.

tations period. *See City of New York*, 476 U.S. at 480, 482, 106 S.Ct. at 2030, 2031; *Pittston Coal Group v. Sebben*, 488 U.S. 105, 123, 109 S.Ct. 414, 425, 102 L.Ed.2d 408 (1988).

▮ The district court, in its order defining the class, waived the exhaustion requirement for the claimants in Category One. In doing so, the district court applied the waiver doctrine to these putative class members and failed to consider the effect of the time bar.[7] In failing to apply the doctrine of equitable tolling to the claims of the Category One plaintiffs, the district court erred. *See City of New York*, 476 U.S. at 482, 106 S.Ct. at 2031 ("For these claimants, we conclude that exhaustion is excused for the same reasons requiring tolling of the statute of limitations."); *accord Pittston Coal*, 488 U.S. at 123, 109 S.Ct. at 425.

▮ The district court also included in the certified class Category Two claimants. The district court reasoned that because it had waived the administrative remedies for the Category One claimants, enforcement of the sixty-day, § 405(g)-limitations period would be inconsistent with its order certifying the Category One claimants. The district court relied upon a Ninth Circuit case, *Briggs v. Sullivan*, 886 F.2d 1132 (9th Cir. 1989), in which the court granted an injunction preventing the Secretary from applying a policy to current or future beneficiaries. *Id.* at 1146. In *Briggs*, the Ninth Circuit stated,

> [i]t would be absurd, and would require the impossible, for us to hold that a plaintiff must file his complaint within 60 days of the Secretary's final decision in a proceeding to which the claimant was a party when we are not requiring the claimant to obtain such a decision in the first place.

*Id.* at 1141 n. 8. The Ninth Circuit, however, has rejected the district court's interpretation of *Briggs*. *Johnson*, 2 F.3d at 924 (holding that *Briggs* does not require tolling of the sixty-day statute of limitations if exhaustion is waived).[8] We likewise reject this interpretation because a plaintiff who can show that exhaustion should be waived[9] may nonetheless be unable to justify a failure to file a claim in a timely fashion.

Thus, the district court erred when it certified the claimants in Categories One and Two pursuant to the waiver doctrine and *Briggs*. But, as to the doctrine of equitable tolling, the claimants in Categories One and Two stand on the same footing.

> *City of New York* clearly states that claimants who have allowed a claim to become final before the filing of a class action through failure to exhaust administrative remedies stand on the same footing as claimants who have received a final agency determination but have failed to seek judicial review.

*Bailey*, 885 F.2d at 64 (citation omitted). Both categories of "lapsed" claimants, hence, must look to equitable tolling principles to bring a claim for relief. *Pittston Coal*, 488 U.S. at 123, 109 S.Ct. at 425.

▮ Two Supreme Court cases set the parameters of the equitable tolling analysis, *City of New York* and *Pittston Coal*. The two cases represent opposite ends of the factual spectrum on the issue of equitable tolling. *See Gould v. Sullivan*, 131 F.R.D. 108, 112 (S.D. Ohio 1989). In *City of New York*, claimants for social security benefits challenged a policy of the Secretary severely limiting the availability of benefits to those claimants with mental impairments. 467 U.S. at 473, 106 S.Ct. at 2525. The potential class included claimants whose administrative remedies had not been exhausted but

---

7. Although we agree that in order to certify these claimants as class members the district court must also waive the exhaustion requirement, the district court must have first found a basis to reopen a "finally determined claim[]," *Pittston Coal Group v. Sebben*, 488 U.S. 105, 122, 109 S.Ct. 414, 424, 102 L.Ed.2d 408 (1988).

8. The *Johnson* court explained that the language in *Briggs* is limited to its facts: the Secretary in

*Briggs* was not obligated to make back payments to claimants. 2 F.3d at 924.

9. Waiver of exhaustion for social security claims is appropriate if the claim is collateral to a claim for benefits, exhaustion would cause irreparable injury, and exhaustion would be futile. *City of New York*, 476 U.S. at 483–84, 106 S.Ct. at 2032.

were now time-barred, claimants who had failed to file within the sixty-day period required by § 405(g), and claimants who had not exhausted their administrative remedies but whose claims were still "live." *Id.* at 477, 106 S.Ct. at 2527. Thus, the *City of New York* putative class was composed of claimants similar to this case's first, second and third categories.[10]

The challenged social security policy in *City of New York* was a secret, internal policy of the SSA. *Id.* at 481, 106 S.Ct. at 2530. As a result, the *City of New York* Court equitably tolled the administrative and judicial limitations periods of the time-barred claims. *Pittston Coal*, 488 U.S. at 123, 109 S.Ct. at 425 ("[In *City of New York*, ] we held that the application of a secret, internal policy by the Secretary of Health and Human Services in adjudicating Social Security Act claims equitably tolled the limitations periods for seeking administrative or judicial review."). The secret policy underlying the *City of New York* challenge was enforced through internal memoranda, returns, and reviews that effectively prevented applicants, counsel, social workers, and advisors from being aware of its existence. *City of New York*, 476 U.S. at 475, 106 S.Ct. at 2027. The government's conduct, in short, prevented the class members from knowing that their rights had been violated. *Id.* at 481, 106 S.Ct. at 2030.

■ The question remaining after *City of New York* is whether the presence of a secret policy is an absolute prerequisite to evoking the doctrine of equitable tolling. *Pittston Coal* is of some assistance. In *Pittston Coal*, the miners challenged an open and published policy of the Secretary of Labor. There the Supreme Court excluded the time-barred members from the class, *Pittston Coal*, 488

U.S. at 121–23, 109 S.Ct. at 424–25, holding that no secret, internal policy existed to justify equitable tolling. *Id.* at 123, 109 S.Ct. at 425. *Pittston Coal* nonetheless does not specifically require such a policy as a prerequisite to the application of equitable tolling.

> Federal courts have typically extended equitable relief only sparingly. We have allowed equitable tolling in situations where the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period, or *where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass.* We have generally been much less forgiving in receiving late filings where the claimant failed to exercise due diligence in preserving his legal rights.

*Irwin v. Department of Veterans Affairs,* 498 U.S. 89, 96, 111 S.Ct. 453, 457–58, 112 L.Ed.2d 435 (1990) (citation and footnotes omitted) (emphasis added). We thus learn that although a secret, internal policy is probably not a prerequisite to equitable tolling, some type of misconduct on the part of the agency or gross, but good-faith, error on the part of the claimant should justify this extraordinary remedy.

■ The real issue to be decided is whether the applicable limitations periods of the Category One and Category Two claimants can be tolled pursuant to the doctrine of equitable tolling.[11] Arguing that equitable tolling should be invoked by the court, the plaintiffs contend that the challenged policy was secret. They argue it was not published in either the Code of Federal Regulations or the Federal Register. The district court, however, found that the Secretary's policy

---

**10.** In the instant case, the Secretary has not challenged the certification of Category Three plaintiffs.

**11.** The plaintiffs argue that waiver of exhaustion does not require the presence of a secret, clandestine policy and cite Eighth Circuit precedent for this premise. *See Schoolcraft v. Sullivan,* 971 F.2d 81 (8th Cir.1992), *cert. denied,* — U.S. ——, 114 S.Ct. 902, 127 L.Ed.2d 93 (1994). We agree. The doctrine of waiver of exhaustion does not require the presence of a secret, clandestine policy. *Id.* at 85. In making this argu-

ment, the plaintiffs apply waiver doctrine and overlook the distinction between "live" and "lapsed".claims, a distinction that is fundamental to the justiciability of these claims. *See Pittston Coal*, 488 U.S. at 122, 109 S.Ct. at 424 ("[A] basis for reopening can be found only if one interprets [the statute] to override the principle of res judicata not just once but perpetually, requiring readjudication and re-readjudication (despite the normal rules of finality) until the Secretary finally gets it right.").

was not a secret policy. J.A. at 78. This finding is not clearly erroneous.

The Secretary's policy was published as a social security ruling, the availability of which is published in the Federal Register. *See supra* note 2. Furthermore, at the time the putative class members received notice of their SSI benefit amount, they received notice to the effect that the total had been reduced for "support and maintenance in-kind from within your household equal to 1/3 of the SSI federal benefit rate." *See, e.g.,* Appellee's Add. at 8. Relying upon either basis—the social security ruling or the printed notice—*see Johnson,* 2 F.3d at 923, the Secretary's policy was not a secret, internal policy.

The plaintiffs have offered no other possible justification for applying equitable tolling. There have been no allegations that the putative class members "actively pursued their judicial remedies," *Irwin,* 498 U.S. at 96, 111 S.Ct. at 457, but failed to file for judicial relief because of any misconduct on the part of the Secretary. Consequently, we find that equitable tolling cannot justify the certification of the Category One and Category Two claimants as members of the class, and thus, we hold that the district court erred when it certified these claimants as class members.[12]

### III. CONCLUSION

We reverse the district court's order certifying as class members those claimants with final decisions that are now barred by a limitations period, and we remand the case to the district court for further proceedings consistent with this opinion.

---

**12.** Although we regret that these claimants had benefits reduced pursuant to the Secretary's policy,

 they would have been vindicated if they had sought judicial review; they chose instead to

accept incorrect adjudication. They are in no different position from any claimant who seeks to avoid the bar of res judicata on the ground that the decision was wrong.
*Pittston Coal,* 488 U.S. at 122–23.