200 F.Supp.2d 1076 (2001)
Zackory MCDONALD, by and through his next friend Linda MCDONALD, individually and on behalf of all persons similarly situated, Plaintiff,
v.
Larry G. MASSANARI, Acting Commissioner of Social Security, and
D. Kent King, in his official capacity as Missouri Commissioner of Education, Defendants.
No. 4:01-CV-793 JCH.
United States District Court, E.D. Missouri, Eastern Division.
October 9, 2001.
Michael A. Ferry, David D. Camp, Philip A. Senturia, Julia A. Mariani, Gateway Legal Services, Inc., St. Louis, MO, for plaintiff.
Raymond W. Gruender, III, Office of U.S. Attorney, St. Louis, MO, Richard G. Lepley, Renee S. Orleans, U.S. Department of Justice, Civil Division, Washington, DC, for Social Security Admin., defendant.
John J. Lynch, Attorney General of Missouri, Assistant Attorney General, St. Louis, MO, Renee S. Orleans, U.S. Dept. of Justice, Civ. Div., Washington, DC, for D. Kent King, defendant.

MEMORANDUM AND ORDER
HAMILTON, District Judge.
Pending before the court is Defendant Larry G. Massanari's Motion to Dismiss. *1077 See Doc. 15. Plaintiff Zackory McDonald, by and through his next friend, Linda McDonald, has filed a Memorandum in Opposition to Defendant Massanari's Motion to Dismiss. Defendant Massanari filed a Reply to Plaintiff's Opposition, and Plaintiff filed a Response to Defendant Massanari's Reply. For the reasons set forth in this Memorandum and Order, Defendant Massanari's Motion is granted.

BACKGROUND
Plaintiff is a fourteen year-old boy, whose mother, Linda McDonald applied for child Supplemental Security Income ("SSI") benefits on behalf of Plaintiff on June 10, 1992. See Doc. 28 at 7.[1] On August 4, 1992, Plaintiff was given the Wechsler Intelligence Scale for Children-Revised (WISC-R) IQ test, and on July 20, 1993, Plaintiff was given the WISC-III IQ test. See id. On November 17, 1993, Administrative Law Judge ("ALJ") Francis P. Dorsey issued a favorable decision on Plaintiff's application, finding that he suffered from diabetes and a behavioral disorder, and ruling that Plaintiff was disabled, based on an individualized functional capacity assessment. See id. Thereafter, Plaintiff began to receive SSI benefits, and continued to do so until September 9, 1999, when the Social Security Administration ("SSA") issued a Notice of Disability Cessation, informing Linda McDonald that it had determined that Plaintiff's disability had ceased. See id. at 7-8.
Linda McDonald filed a timely request for reconsideration and a request that Plaintiff's benefits continue pending appeal. See id. at 8. On March 20, 2000, the SSA issued a Notice of Reconsideration and informed Linda McDonald that it had decided again to terminate Plaintiff's SSI. See id. Linda McDonald filed a timely request for a hearing before an ALJ and a request that Plaintiff's benefits continue pending appeal. See id. The matter was assigned to ALJ James K. Steitz, who, through his case technician, requested that the Missouri Disability Determinations Services ("DDS") obtain a full psychological examination of Plaintiff, including IQ testing, the Beck Depression Inventory, and Vineland Adaptive Behavior Scales evaluation.[2]See id. Judge Steitz further requested that the Missouri DDS obtain Plaintiff's records from Psych Care Consultants. See id.
The Missouri DDS refused, or failed, to comply with Judge Steitz's request, and he issued a second request, dated July 14, 2000. See Pl.'s Ex. 1. R. Rocco Cottone, Ph.D., responded for the Missouri DDS, stating that Plaintiff's previous IQ scores were 96, 82, and 88, and that these scores were within normal limits; that a psychological examination, performed on August 26, 1999, estimated that Plaintiff's intelligence was within the "low average to average range," that a psychological evaluation performed on August 26, 1999, gave Plaintiff a Global Assessment of Functioning ("GAF") score of 70-75, and that, therefore, there was "no justification for further IQ testing or additional psych assessment." Pl.'s Ex. 2. An unsigned notation added to Dr. Cottone's response stated *1078 that "Beck scale is not appropriate for a child. IQ is normal with no intervening trauma to cause decrease in intelligence." Id.
On May 22, 2000, Plaintiff filed his complaint in the matter under consideration. See Doc. 1. Subsequently, Plaintiff filed an amended complaint and a second amended complaint. See Doc. 28. In the "Preliminary Statement" in the Second Amended Complaint, Plaintiff states that he is bringing his action pursuant to the Administrative Procedure Act, the Social Security Act, the Fifth and Fourteenth Amendments to the United States Constitution, 42 U.S.C. § 1983, and that he is seeking declaratory and injunctive relief pursuant to the Equal Access to Justice Act and 42 U.S.C. § 1988. See Doc. 28 at 1. Plaintiff filed Count I of the second amended complaint pursuant to the Administrative Procedure Act. Count I alleges that the Commissioner acted inconsistently with that Act, by breaching his duty to assure that DDS did not assume a role in Social Security and SSI appeals decision making process. Count I specifically alleges that Defendant Massanari ("the Commissioner") violated 5 U.S.C. § 554 denying Plaintiff, and others similarly situated, their right to a hearing conducted by a fully independent ALJ.[3] Count II alleges that the Commissioner denied Plaintiff and others similarly situated due process by the practice or policy of allowing the DDS to refuse to carry out ALJ's requests relating to the development of Social Security disability insurance and/or SSI. Count III alleges that Defendant D. Dent King of the Missouri DDS denied Plaintiff, and others similarly situated, due process by breaching his duty to ensure that the DDS carried out its duties with regard to development of Social Security disability and SSI. Count IV alleges that both defendants have a policy and practice of failing or refusing to carry out ALJ's requests relating to the development of Social Security disability and SSI cases, which cases are assigned to ALJ's for hearing and that these policies and practices violate the rights of Plaintiff and others similarly situated. Plaintiff's second amended complaint seeks class certification, declaratory judgement, and injunctive relief in regard to each count.
The Commissioner filed a motion to dismiss the complaint prior to Plaintiff's filing his amended complaints. See Doc. 15. On September 28, 2001, the Commissioner filed a motion requesting that his motion to dismiss and motion package be deemed refiled as to Plaintiff's second amended complaint. See Doc. 36. The court granted this motion on October 3, 2001.
The Commissioner submitted an a affidavit dated July 27, 2001, from Laurence Miller, Team Leader of the Disability Litigation Team, Office or Program Benefits, stating that Plaintiff is receiving SSI benefits and will continue to do so as long as his case is under review by an ALJ. See Doc. 15Def.'s Motion to Dismiss, Attach. With his memorandum in opposition to the Commissioner's motion to dismiss, Plaintiff submitted an affidavit from Jesse H. Butler, Regional Chief ALJ for the Kansas City Regional Office, Office of Hearings and Appeals, SSA. In his affidavit, ALJ *1079 Butler said that on September 10, 2001, he spoke with ALJ Steitz, and advised him that the Missouri DDS is willing to undertake additional development of Plaintiff's SSI case, if ALJ Steitz believed it was still warranted. See Doc. 15Pl.'s Mem., Attach. Chief ALJ Butler further said that he directed ALJ Steitz to take any action necessary to "move the case to hearing and disposition." Id. Chief ALJ Butler also said that if ALJ Steitz "does not issue a decision within a reasonable time, [he] will direct the Hearing Office Chief ALJ in Creve Coeur, Missouri, to reassign the case to a different ALJ pursuant to 20 C.F.R. §§ 404.929 and 416.1429." Id.
The Commissioner also submitted an affidavit from Cheryl Ritter, Director of the Center for Disability Programs in the SSA regional office in Kansas City, Missouri, which affidavit was dated September 26, 2001. See Doc. 37, Attach. In her affidavit, Ms. Ritter states that she oversees the administration of Title II and Title XVI disability programs, including actions taken by the region's DDSs which are located in various states, including Missouri. Ms. Ritter further states that, despite the analysis from a consulting psychologist and a consulting pediatrician, who opined that additional development was not necessary, she advised Chief ALJ Butler, on August 14, 2001, that she would assist him in obtaining "evidence that could be expected to provide the documentation necessary to adjudicate [Plaintiff's] case." Id. Ms. Ritter further states that, on September 20, 2001, she wrote an additional letter to Chief ALJ Butler addressing confusion over the issue about the willingness of Missouri DDS to obtain additional development in Plaintiff's case. This letter, which was attached to her affidavit, further states that "Missouri DDS was willing to obtain additional development if Judge Steitz continued to believe it necessary.... That development would include a psychological examination with IQ testing, the Beck test and the Vineland test." Id., Attach. - Mem. Ms. Ritter further informed Chief ALJ Butler that "the DDS is willing to obtain any other medical evidence that would be appropriate under the Social Security Regulations." Id. Ms. Ritter noted that procedurally, because Plaintiff's case with the DDS was no longer open, ALJ Steitz should submit a new request for DDS for development, if he believes it is necessary. See id.
Most significantly, with his response to the Commissioner's reply to Plaintiff's memorandum in opposition to the Commissioner's Motion to Dismiss, Plaintiff submitted an affidavit from ALJ Steitz. See Doc. 40, Ex. 3. In this affidavit, ALJ Steitz confirmed what Chief ALJ Butler said in his affidavit, and further said that he has "set a hearing in [Plaintiff's] case for October 10, 2001, at 9:00 a.m." Id. at 2. ALJ Steitz further said that, at this hearing, he "intend[s] to raise with [the Plaintiff] the issues raised by Regional Chief ALJ Butler's memos of August 15 and September 10 and his interaction with the Regional Commissioner's Office regarding the pending claim, and determine an appropriate course of action." Id.

APPLICABLE STATUTES
The Social Security Disability Insurance program pays benefits to disabled persons, including children. See 42 U.S.C. § 1381-83(f). Procedurally, an agency in a claimant's state makes an initial determination as to whether a claimant is disabled, in accordance with regulations promulgated by the Commissioner. See 42 U.S.C. §§ 405(a), 421(a), 1383(b)(a). In Missouri, this function is performed by the Missouri DDS.
20 C.F.R. §§ 404.929(a)(1) and 416.1409(a) provide that if a claimant is dissatisfied with an initial determination, he or she may request that the DDS perform *1080 de novo reconsideration. If a claimant is dissatisfied at this stage, pursuant to 42 U.S.C. § 405(b)(1) and 20 C.F.R. § 404.929 the claimant may request a de novo hearing before an ALJ. A claimant may also seek review of an ALJ's decision before the Appeals Council. See 20 C.F.R. §§ 404.967, 416.1467. Finally, 42 U.S.C. § 405(g) provides, in pertinent part that:
Any individual, after any final decision of the Commissioner ... made after a hearing to which party, ... may obtain review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner ... may allow. Such action shall be brought in the district court of the United States for judicial district in which the plaintiff resides.... The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying or reversing the decision of the Commissioner ...., with or without remanding the cause for a hearing.
The childhood standard for disability is set forth in the Personal Responsibility and Work Opportunity Reconciliation Act of 1996, 42 U.S.C. § 1382c(a)(3)(C). Under the 1996 Act, children under the age of eighteen must establish that they have a medically determinable physical or mental impairment, which results in marked and severe functional limitations and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. See id. When sufficient medical information is not otherwise available to evaluate a child, the government may arrange for a "consultative examination" ("CE") or test by a treating professional or an independent source. See 20 C.F.R. §§ 404.1512-404.1519t. Social Security regulations delegate the day-to-day oversight of CE programs to state DDSs. See 20 C.F.R. §§ 404.1517-1519t.

DISCUSSION
In his Motion to Dismiss, the Commissioner asserts that Plaintiff's second amended complaint should be dismissed because (1) 42 U.S.C. § 405(g) provides that this court lacks subject matter jurisdiction, (2) the Administrative Procedure Act, 5 U.S.C. § 701(a)(2), prohibits judicial review of the challenged practices because such polices and practices are committed to the agency's discretion by law, and (3) the Plaintiff failed to exhaust his administrative remedies, as required by 42 U.S.C. § 405(g).
The court first addresses the issue of subject matter jurisdiction. As stated above, 42 U.S.C. § 405(g) provides for judicial review of a final decision of the Commissioner. The Eighth Circuit has held that "[a]n administrative exhaustion requirement is jurisdictional only if it goes beyond the language necessary to codify an exhaustion requirement." Chelette v. Harris, 229 F.3d 684, 687 (8th Cir.2000) (citing Wright v. Morris, 111 F.3d 414, 420-21 (6th Cir.1997)), cert. denied, 531 U.S. 1156, 121 S.Ct. 1106, 148 L.Ed.2d 977 (2001). In distinguishing between "provisions that merely codify the requirement that administrative remedies must be exhausted and those that impose jurisdictional requirements," the Supreme Court has said that "[t]he latter must contain `sweeping and direct' statutory language indicating that there is no federal jurisdiction prior to exhaustion, or the exhaustion retirement is treated as an element of the underlying claim." Id. (citing Weinberger v. Salfi, 422 U.S. 749, 757, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975) (Weinberger)). Additionally, exhaustion is a means to facilitate an administrative agency's efficient functioning, "so that the agency may ... have an opportunity to correct its own errors, to afford the parties and the courts the benefit of its experience and expertise, and to *1081 compile a record that is adequate for judicial review." Rodabaugh v. Sullivan, 943 F.2d 855 (8th Cir.1991) (citing Weinberger, 422 U.S. 749, 765, 95 S.Ct. 2457).
Plaintiff argues that exhaustion is impossible in this matter. The facts, however, belie this assertion. See Pl.'s Mem. in Opposition at 3. The undersigned first finds that the uncontroverted facts in this matter establish that the SSA is continuing to process Plaintiff's request for review of the SSA's determination to discontinue his benefits. The affidavits from ALJ Steitz, Chief ALJ Butler, and Ms. Ritter establish that the SSA is attempting to correct its own errors or omissions, if errors or omissions were made.[4] Therefore, contrary to the assertions of Plaintiff, exhaustion will not be futile. See id. at 7. The undersigned further finds that for this court to interfere with the SSA's processes prior to a final determination by that agency, would deny the parties and the courts the "benefit of [the SSA's] experience and expertise." Id.
Moreover, the Eighth Circuit has held that a Social Security claimant, who alleges that his civil rights were violated by wrongful termination of his disability benefits, "may seek judicial review of the Secretary's decision ... only after a final decision by the Secretary `made after a hearing.'" Rowden v. Warden, 89 F.3d 536, 537 (8th Cir.1996) (citing 42 U.S.C. § 405(g)). See also Medellin v. Shalala, 23 F.3d 199, 202 nn. 4-5 (8th Cir.1994). In Rowden, the court held that, because the claimant had not requested a hearing before an ALJ, he had failed to exhaust his administrative remedies. See id. Similarly, in the matter under consideration, a hearing is currently scheduled, and there is no suggestion that it will not be held. Moreover, ALJ Steitz stated in his affidavit that he will take whatever action is necessary to resolve the Plaintiff's case.
The Supreme Court has determined that the exhaustion requirement may be waived where a claimant establishes:
(1) a colorable constitutional claim collateral to the substantive claim;
(2) irreparable injury by enforcement of the exhaustion requirement; and
(3) that the purpose of exhaustion would not be served by requiring further administrative procedures.
Rodabaugh, 943 F.2d at 857 (citing Weinberger, 422 U.S. at 765, 95 S.Ct. 2457). The undersigned further finds that Plaintiff has not established a colorable constitutional claim collateral to his substantive claim. Plaintiff generally alleges that his rights, under the Fifth and Fourteenth Amendment and pursuant to 41 U.S.C. § 1983, were violated. However, the administrative process is still proceeding to determine Plaintiff's continued eligibility for disability benefits. Therefore, the undersigned finds that Plaintiff fails to state a constitutional claim which is collateral to his substantive claim; resolution of his *1082 substantive claim arguably will resolve the alleged constitutional claims.
The undersigned also finds that Plaintiff cannot claim irreparable injury because he is continuing to receive, and will continue to receive, benefits, at least until the ALJ resolves his case. Because final resolution by the SSA will afford the parties the benefit of that agency's expertise and because Plaintiff will not suffer irreparable harm pending resolution of his case by the SSA, the undersigned further finds that the purpose of exhaustion, as stated by the Court in Weinberger, will be served by requiring Plaintiff to exhaust his administrative remedies.

CONCLUSION
The court finds that Plaintiff has failed to exhaust administrative remedies according to 42 U.S.C. § 405(g) and has further failed to establish a basis upon which this requirement should be waived. The court further finds that Plaintiff's Second Amended Complaint should be dismissed. However, if a basis for waiver is established at some future date, Plaintiff may refile his complaint. Also, upon a final determination by the SSA, Plaintiff may file a complaint for review of the final determination of the Commissioner.
Accordingly,
IT IS HEREBY ORDERED that Defendant Larry G. Massanari's Motion to Dismiss (Doc. 15) is GRANTED.
IT IS FURTHER ORDERED that Plaintiff's Second Amended Complaint (Doc. 28) is DISMISSED, without prejudice.
NOTES
[1] Unless otherwise stated, the facts are as asserted in Plaintiff's amended complaint. In his memorandum in support of his motion to dismiss, Respondent Larry G. Massanari, Acting Commissioner of Social Security ("the Commissioner") does not deny the veracity of the factual allegations of the amended complaint. The facts as stated above are uncontroverted, unless otherwise stated.
[2] The IQ tests previously administered in 1992 and 1993, were eight and seven years old, respectively, and, pursuant to 20 C.F.R. Part 404, Subpart P, Appendix 1, § 112.00(D)(10), were therefore, no longer valid for purposes of determining Plaintiff's ability to acquire and use information.
[3] 5 U.S.C. § 554(d) states in pertinent part:

Except to the extent required for disposition of ex parte matters as authorized by law, [an Administrative Law Judge] may not ... (2) be responsible to or subject to the supervision or direction of an employee or agent engaged in the performance of investigative or prosecuting functions for an agency. An employee or agent engaged in the performance of investigative or prosecuting functions for an agency in a case may not, in that or a factually related case, participate or advise i the decision, recommended decision, or agency review pursuant to section 557 of this title, except as witness or counsel in public proceedings.
[4] In his Response to Defendant's Reply to Plaintiff's Opposition to Defendant's Motion to Dismiss at 6, Plaintiff asserts that Chief ALJ Butler's September 10, 2001, letter to ALJ Steitz was "peremptory." Plaintiff argues that this letter does not indicate the SSA's intent to resolve Plaintiff's case. Plaintiff further states that the reason ALJ Steitz rescheduled the hearing for October 10, 2001, is that Chief ALJ Butler threatened to assign the case to another judge. See id. at 7-8. Indeed, Butler's letter shows his intent to assure the resolution of this matter according to SSA procedures. ALJ Steitz's motivation is not a consideration for this court. This court is concerned with the uncontroverted facts that Chief ALJ Butler will assure that Plaintiff receives consideration of his request for continued benefits according to SSA procedures and that ALJ Steitz will conduct a hearing on October 10, 2001.